REPUBLICAN NEWSPAPER CO. OF OMAHA v. NORTHWESTERN ASSOCIATED PRESS.

*(Circuit Court of Appeals, Eighth Circuit.  July 19, 1892.*

No. 104.

1. EVIDENCE—MATERIALITY—PROOF OF VALUE.
   In an action by a newspaper company against an association organized to procure and distribute news, for the alleged wrongful cancellation of its membership therein, evidence as to the number of proposed purchasers of the membership and the amounts offered was admissible, as showing the value thereof.

2. SAME—PLEADINGS AND EVIDENCE.
   The damages sought being limited by the pleadings to the value of the canceled membership, the fact that the paper suspended publication shortly after the cancellation was immaterial, and it was error, therefore, to admit evidence of want of business ability in the manager and of the causes of the suspension.

In Error to the Circuit Court of the United States for the District of Nebraska.

Action by the Republican Newspaper Company of Omaha against the Northwestern Associated Press to recover damages for an alleged wrongful cancellation of plaintiff's membership therein.  Verdict and judgment for plaintiff for $802.50, from which it appeals on the grounds of inadequacy of the verdict, and of improper admission and rejection of evidence.  Reversed.

*Ralph W. Breckenridge,* for plaintiff in error.

*E. W. Simeral, R. S. Hall,* and *C. J. Green,* for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

SHIRAS, District Judge.   The Republican Newspaper Company, a corporation organized under the laws of the state of Nebraska, became, about the 1st of July, 1890, the owner of the plant and property of the Omaha Republican, a newspaper founded in 1858, and published in the city of Omaha, by purchase from J. C. Wilcox, the former owner thereof, who became the president of the corporation, and continued in the active control of the publication of the newspaper.   As part of the property included in the transfer, there passed to the corporation a membership or one share in the Northwestern Associated Press, a corporation created under the laws of the state of Illinois, and formed mainly for the purpose of procuring and distributing telegraphic and other news reports. Shortly after the transfer above stated, and about the 30th of July, 1890, the publication of the Republican was suspended until December 12, 1890, when it was renewed, and continued until January 8, 1891, when it again ceased, and has not been since resumed.   On September 24, 1890, the executive committee of the Associated Press held a meeting at Chicago, Ill., and, without notice to the Republican Newspaper Company, canceled the stock of the Omaha Republican, upon the theory that the suspension of the publication of the newspaper terminated the rights

of the shareholder, and justified the cancellation of the stock; and this action of the committee was approved at a called meeting of the association held in Chicago, December 19, 1890. Since the action taken by the executive committee in September, 1890, no telegraphic dispatches or other news reports have been furnished to the Republican Company, and its right to be considered a member of the Associated Press has been wholly denied. On the 10th of January, 1891, this action was brought in the United States circuit court for the district of Nebraska by the Republican Newspaper Company to recover the value of the franchise or membership in said Associated Press, of which it claimed it had been deprived, and had been thereby damaged in the sum of $50,000. The case was heard before the court and jury at the November term, 1891, and a verdict was returned in favor of the plaintiff in the action, assessing the damages at $802.50. The plaintiff moved for a new trial on the ground that the damages awarded were wholly inadequate and without support in the evidence, and that the court had erred in admitting improper evidence, and in rejecting competent evidence offered by plaintiff, on the subject of the damages. The motion for new trial was overruled, and judgment was entered on the verdict, and the plaintiff brings the case to this court by a writ of error, assigning as grounds for reversal the ruling of the court in admitting and rejecting evidence upon the question of the damages caused to plaintiff by the wrongful action of defendant. As the case stands, upon the record in this court, it is settled by the verdict and judgment that the plaintiff was wrongfully deprived of its membership in the defendant company, and by the cancellation of the share of stock owned by it plaintiff has been damaged to the value of the stock, or "franchise," as it is called in the testimony.

Under these circumstances, it was incumbent on the plaintiff to prove the value of the stock or franchise of which it had been deprived, and to that end it was sought to introduce evidence showing that after the suspension of the newspaper in July, 1890, offers had been made for the purchase of the franchise, and showing the number of proposed purchasers and amounts offered by them, which testimony was rejected, and exceptions to the ruling were duly taken. As we understand the issues in the case, it was error to reject this evidence. By the instructions given the jury, they were required to find the value of the property of which the plaintiff had been wrongfully deprived, and therefore any and all facts fairly tending to show the actual value of the property should have been admitted as aids in enabling the jury to reach a correct conclusion on this issue. When an article like wheat or cattle is freely sold upon an open market, the price paid is deemed to be not only competent, but the best, evidence of the value of the article. The price paid, however, consists, after all, of bids made and accepted; and if it should appear that on a given day no sales had been actually concluded on the market, but that offers to sell and offers to buy had been made, these offers would be competent as aids in arriving at the probable market value on the day named. In regard to property of the peculiar kind of that involved in the present controversy, it does not possess what is com-

monly called a market value, in the sense of a price fixed by sales made in open market; but the fact that when such property is for sale parties are ready to buy it shows that it has a value, and the price offered tends to prove what such value is. In other words, proof of offers to purchase at given prices, made in good faith, is some evidence of the actual value of the article sought to be purchased, as well as of its salability. Thus, in *Cliquot's Champagne*, 3 Wall. 114, in which was involved the question of the value of certain wines imported into this country from France, the trial court admitted in evidence certain so-called "prices current," furnished to the agent of the United States by parties dealing in the wines at Paris, and which contained the prices at which these dealers offered the wines for sale. It was objected thereto, among other things, that no actual transactions or sales based thereon had been proved. The supreme court held that the evidence was admissible, as tending to throw some light upon the matter at issue. See, also, *Fennerstein's Champagne*, 3 Wall. 145. In *Harrison* v. *Glover*, 72 N. Y. 451, it was held that the value of an article may be determined by offers to sell in the ordinary course of business, as well as by actual sales, and that "a price list stating the price at which a manufacturer will sell, or statements of dealers in answer to inquiries, are competent evidence of the market price of a marketable commodity, and is a common way of ascertaining or establishing a market price." Before a jury should give weight to testimony of the kind in question it must appear that the offers to purchase were made in good faith, by parties able to complete the same in case of acceptance; or, in other words, that the same are not mere straw bids, or made for the purpose of manufacturing evidence for the particular case. But if the circumstances are such as to show that such offers were made in good faith, then, in our judgment, evidence thereof is admissible in a case like the present, wherein, owing to the peculiar nature of the property involved, evidence showing the market value cannot be adduced. In all such cases the jury are entitled to have given them all the aids possible in determining the value of the property in question, and certainly the fact that third parties were desirous of purchasing the property, and to that end offered certain sums therefor, does throw some light upon the value of the property thus sought to be purchased, and the refusal of the circuit court to permit the introduction of this class of evidence was therefore error, to the substantial prejudice of the plaintiff.

Exceptions were also taken on the trial, and error is assigned thereon, to the admission of testimony tending to show the causes of the suspension of the Republican newspaper; that the publication thereof was at a loss; and touching the alleged want of business capacity of J. C. Wilcox. We infer that the trial court was unquestionably induced to admit this evidence by reason of the ambiguous language used in plaintiff's petition, wherein it is averred, in substance, that a news franchise is indispensable to the successful publication of a newspaper in the city of Omaha, and that the action of the defendant in depriving the plaintiff of the rights and privileges conferred by the ownership of the stock wrongfully canceled had utterly wrecked the newspaper and the plant con-

·nected therewith, and had compelled the final suspension of the paper. If the plaintiff was in fact seeking damages on the ground that the action of defendant in canceling the stock of plaintiff had wrecked the newspaper and destroyed the value of the entire plant connected therewith, then it would have been proper for defendant to show what the causes of the suspension of the paper were, and the value of the business and property belonging thereto; but as we construe the petition of plaintiff, and as the trial court in its charge to the jury construed the same, the real cause of action counted on was the cancellation of the stock wrongfully, and the damages sought was the actual cash value of the stock; and upon these issues the evidence admitted on the matters above stated, which we need not set forth in detail, was wholly immaterial. Whether the plaintiff could, in view of the allegations in the petition, demand a reversal of the judgment if the admission of this evidence was the only error relied upon, we need not consider. As the case must be reversed upon the first point herein decided, it is enough to say that the business ability of J. C. Wilcox, the question of profit or loss resulting from the publication of the Republican newspaper, and the causes of its suspension are matters wholly aside from the issues upon which this cause is to be determined, and the same is true of the evidence showing the method of conducting the business of the other newspapers published in the city of Omaha. The questions upon which evidence was competent and material were: (1) Was the plaintiff the owner of a share in the defendant company which it could hold or dispose of after the suspension of publication of the Republican newspaper? (2) Did the defendant wrongfully cancel this share of stock, and thereby deprive plaintiff of its property therein? (3) What was the value of the share of stock so canceled?

In order, however, that the defendant should not be placed at a disadvantage before the jury by suggestions in the petition that the Republican was wrecked by the refusal of the defendant to furnish dispatches to it, we would suggest that the plaintiff be permitted to strike these averments out of the petition, and to confine the statement of the cause of action to the facts necessary to show ownership of the stock by plaintiff, the wrongful cancellation thereof by defendant, and the damages caused, to wit, the loss of the value of the stock, and thus the allegations of the petition will be limited to a statement of the ultimate facts upon which plaintiff relies as grounds of recovery. The judgment below is reversed, and cause is remanded to the circuit court, with instructions to grant a new trial.