(156 App. Div. 134.)

## CAUSA v. KENNY.

(Supreme Court, Appellate Division, First Department. April 4, 1913.)

1. EVIDENCE (§ 553*)—EXPERTS—HYPOTHETICAL QUESTION.

Where a hypothetical question to an expert, instead of containing a statement of facts which plaintiff claimed to have proved, recited the conflicting testimony of various witnesses and the opinions of physicians who had attended plaintiff, leaving the experts to base their opinions on such of the facts assumed as best suited their convenience, it was improper.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2369–2374; Dec. Dig. § 553.*]

2. EVIDENCE (§ 553*)—EXPERTS—HYPOTHETICAL QUESTION.

A hypothetical question propounded to an expert should be so framed that the jury would be able to know whether it was predicated on the facts which the jury found to be proved.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2369–2374; Dec. Dig. § 553.*]

3. EVIDENCE (§ 554*)—EXPERTS—HYPOTHETICAL QUESTION—NONRESPONSIVE ANSWER—EFFECT.

Where a physician, after qualifying as a medical expert, was asked, as part of a hypothetical question, from what in his opinion plaintiff was suffering, the fact that he answered, "I don't know," did not justify the court in sustaining an objection to a further question calling for the witness' opinion from the facts assumed.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2375; Dec. Dig. § 554.*]

4. NEGLIGENCE (§ 131*)—DANGEROUS PREMISES—SUBSEQUENT REPAIRS.

In an action for injuries to plaintiff by a fall on a defective stair in a tenement building, and by being almost simultaneously struck by a fall of plaster, evidence that, within 24 hours after the accident, the janitor was observed making repairs to the step claimed to have been defective and on which plaintiff claimed to have fallen, was inadmissible.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 255, 256; Dec. Dig. § 131.*]

Appeal from Trial Term, New York County.

Action by Salvatore Causa against George J. Kenny. From a judgment for plaintiff and from an order denying defendant's motion for a new trial, he appeals. Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

William Travers Jerome, of New York City, for appellant.
John Vernou Bouvier, Jr., of New York City, for respondent.

McLAUGHLIN, J. The plaintiff leased from the defendant rooms in a tenement house in the city of New York, and, while going therefrom down a public stairway, slipped, fell, and sustained injuries which necessitated his being carried back to his room. While being carried back, the plaster in the hallway fell, and a portion of it struck him upon the head, inflicting further injuries. This action was brought to recover damages alleged to have been sustained both from the fall upon the stairs and the fall of the plaster, plaintiff claiming each was

due to the defendant's negligence. Plaintiff had a verdict for $6,000, and from the judgment entered thereon and an order denying a motion for a new trial, defendant appeals, asking that the judgment be reversed for errors committed at the trial.

[1] The plaintiff claims to have sustained a fracture of the skull, a lesion of the brain which has resulted in a partial or complete paralysis and anæsthesia of the right side. To prove that the paralysis and anæsthesia resulted from the injuries, plaintiff's counsel called two medical experts who were permitted to answer a hypothetical question which, in my opinion, was erroneous in form and substance, and of itself necessitates a new trial. Prior to calling the experts, one witness had testified that plaintiff had been hit with a piece of plaster about the size of one-half the front of a newspaper (11x16 inches), and another that it was only about 9x4 inches. One witness testified that after the plaintiff was struck by the plaster, about a tumblerful of blood flowed from his right ear, while another testified that only a small quantity of blood flowed; that it merely trickled out and coagulated. The attending physician testified that on seeing the blood flow from the ear, he diagnosed the plaintiff's injury as a lesion of the brain, while another physician testified that a few weeks after the injuries he concluded from the increasing paralysis that the plaintiff had sustained a fracture of the skull. The hypothetical question which was propounded to the experts, instead of containing a statement of the facts which the plaintiff claimed to have proved, contained a recital of the conflicting testimony and the opinions of the physicians who had attended the plaintiff. For instance, the experts were asked to assume, referring to the plaster which fell, that:

"A piece struck him, varying in size from a half of the front page of a newspaper to a piece somewhat of the dimensions of the Bible by the side of your right arm there, and about an inch and a half in thickness. * * * Assume further that he was put to bed by those aiding him, still in an unconscious condition, and the blood was observed to flow from his ears and from his nose and from his mouth. By one it was described, the time he saw it, as a trickle from the left ear. By another witness it was described as coming forth in quantities; he could not state the amount for the reason that most of it had been absorbed and had saturated a bandage around his head, but he would assume it was a portion of a tumblerful at least of blood. * * * Assume further that a physician treated him, having arrived upon the day of the accident—the time not being definitely determined—but that he (the physician) observed when he did arrive upon that day that there was a flow of blood from the left ear by reason whereof he assumed the existence of a brain lesion. And assume furthermore that there was diagnosed a fracture of at least two ribs on the right side, * * * and assume further that the existence of a brain lesion was diagnosed by one physician, and the existence of a fractured skull was diagnosed by another physician, and that in respect of the diagnosis of a fractured skull by one physician, it was based, among other things, upon the fall downstairs and upon the flow of blood from the ears, mouth, and nose, which was a part of the medical history that he (that physician) had described before making his final diagnosis of fracture."

A hypothetical question put to an expert witness requires him to give his opinion based entirely upon an assumed state of facts. This question did not ask for an opinion of that kind. The experts, instead

of being asked to assume that a tumblerful of blood had flowed from the plaintiff's ear, or that only a small quantity had done so, were permitted to decide for themselves just what the fact was; so, in regard to the size of the piece of plaster which struck the plaintiff, and the diagnoses of the two attending physicians. The result was that when the experts answered the question that in their opinion the injuries received by the plaintiff were the cause of his then condition, the jury was unable to say upon what facts that opinion was based. In other words, the experts might have assumed the existence of one state of facts, the jury have found such facts had not been proved, and yet it would be unable to say that the experts' opinions had been rendered upon facts not proved.

[2] The question should have been so formed that the answer when given would have enabled the jury to find whether or not it were predicated upon facts established. Link v. Sheldon, 136 N. Y. 1, 32 N. E. 696; Guiterman v. Liverpool Co., 83 N. Y. 358.

[3] But, if it be assumed that the hypothetical question just considered was proper, then the court erred in not permitting defendant's witness McDonald to answer it. Dr. McDonald was produced by defendant as a medical expert, and after the question had been read to him he was asked from what, in his opinion, the plaintiff was then suffering. He made an irresponsive answer, saying, "I don't know." He was not asked to state what the plaintiff was suffering from, but for his opinion based upon the facts set forth in the hypothetical question. He was then asked, "Can you form any opinion from that statement of facts?" This was objected to, the objection sustained, and the defendant excepted. The witness had qualified as an expert prior to the question being asked, and the fact that he gave an irresponsive answer did not render him incompetent to express an opinion. He had not treated the plaintiff, nor did he have, so far as appears, any actual knowledge of his condition. He did not know from what he was suffering or its cause. Nevertheless he could give an opinion upon an assumed state of facts.

[4] The court also erred in permitting the plaintiff to prove that some 24 hours after the plaintiff fell upon the stairs the janitor of the building, a person in the employ of the defendant, was observed making repairs to the step claimed to have been defective and upon which plaintiff claimed to have fallen. An attempt is made to justify the ruling of the trial judge in this respect, on the ground that the testimony received tended to prove that the defendant had notice of the defect in the stairs prior to the accident. What was done 24 hours after the accident did not prove or tend to prove defendant's knowledge of a defect which existed 24 hours before. The rule is thoroughly settled, and well understood, that changes or repairs made in an appliance, structure, or machine, which caused an accident, is not an admission of negligence in having maintained the appliance, structure, or machine in its former condition. Corcoran v. Village of Peekskill, 108 N. Y. 151, 15 N. E. 309; Getty v. Town of Hamlin, 127 N. Y. 636, 27 N. E. 399; Dougan v. Champlain Transportation Co., 56 N. Y. 1.

Other errors are alleged to have been committed; but since the judgment must be reversed and a new trial ordered, they may not again be presented, and therefore it is unnecessary to discuss them.

The judgment and order appealed from are reversed, and a new trial ordered, with costs to appellant to abide event. All concur.