FENNERSTEIN'S CHAMPAGNE.

In order to show the actual market value of articles of merchandise at a particular place in a foreign country, letters by third parties abroad to other third parties—offering to sell at such rates—if written in ordinary course of the business of the party writing them, and contemporaneously with the transaction which is the subject of the suit—are admissible as evidence, even though neither the writers nor the recipients of the letters are in any way connected with the subject of the suit, and though there is no proof that the writers of the letters are dead.

ON a libel of information and seizure in the District Court for the Northern District of California, the question was whether certain champagne wines made at Rheims, in France, and invoiced for this country in October, 1863, had been knowingly invoiced below "the actual market value of them at the time and place when and where manufactured," at which actual value the statute requires that they should be valued.† Upon the trial, as appeared by the bill of exceptions, the claimants introduced testimony tending

---

* Taylor v. United States, 3 Howard, 210.

† The reader who desires a full view of the nature and effect of this statute will find it in the preceding case. The present case involved all the questions recited in that, and the additional point presented in the syllabus beside. Of course the latter only is reported.

to show that champagne wines in the hands of the manufacturers in the champagne district of France, in a manufactured state, ready for consumption, have no fixed actual market value, and are not sold or dealt in at the place of production. To rebut this evidence and for the purpose of showing that such wines are held for sale at current rates and prices, at which they are freely offered and sold there, and also to show, among other things, the market value of the wines in question, the United States offered in evidence seven letters, dated on and between October 27, 1863, and May 12, 1864, from various persons, large dealers át Rheims, where, as already said, the wines were manufactured. One will exhibit the type of all:

"RHEIMS, 29th of April, 1864.

"MR. AMOS HILL, OF CALIFORNIA,
Edwards's Hotel, Hanover Square, London.

"I received the letter which you have done me the honor to write to me, under date of Liverpool, 26th instant, and I hasten to answer it. I sell only one single quality of champagne wine, 'Qualité Superieure,' Eugene Cliquot's brand. The price of this wine is four francs the bottle, and four and a quarter francs the two half-bottles, taken at Rheims, packing included; and I allow 3 per cent. discount for payment in cash. I know perfectly well the kinds of wine which suit the American taste. My brand is also very highly appreciated in New York and California. I have put the price at the lowest that I can sell wine, in consideration of the importance of your orders, and in the hope of establishing permanent relations with your respectable house.

"Accept, Monsieur, my hearty salutations.

"EUGENE CLIQUOT."

To the introduction of these letters the claimant's counsel objected, assigning the same grounds which were assigned against the introduction of certain Prices-Current in the preceding case of *Cliquot's Champagne*, to wit: because they were immaterial and irrelevant; because they referred to champagne wines different in kind, quality, and price from those proceeded against in this action; because no actual sale or purchase had been or was proposed to be proved,

based upon or connected with the letters offered; assigning also as ground additional that these letters were *res inter alios acta*, and that the letters in reply to which they were written were not produced.

The court below admitted the letters, and the government had judgment. On error here their admissibility was the point discussed.

*Mr. D. B. Eaton, for the claimant:* The theory of the law of evidence, on which these letters were received, would seem to have been this: that when the question is, whether there is a market price for an article, and what the same is at a specific time and in a given city, in a foreign country, the facts relative thereto may be proved by reading in evidence whatever any manufacturer of the article referred to has written on the subject at any time, within about a year of the date in question, to anybody else in any part of the world; and that this may be done when all the letters to which those read are responses, are withheld; when, for aught that appears, *those* letters were mere *decoys*, written to bring back a particular reply to be used in evidence; when no account is given of the persons to whom the letters offered in evidence purport to be addressed and when the name (Mr. Amos Hill, in this one case), may be a *pseudonyme* merely. Is this court ready to declare, in solemn decision, such a theory of evidence, a true one?

Independently of all the objections which in the case of *Cliquot's Champagne* were made to certain Prices-Current there offered, and which apply as well to these letters, the objection of *res inter alios acta* has direct and the strongest bearing.

*Mr. Speed, A. G., and Mr. Lake, D. A. for California, contra*

Mr. Justice SWAYNE delivered the opinion of the court

The only point of the several objections taken to the admission of the letters necessary to be considered is, that they were *res inter alios acta,* and hence incompetent. The other are disposed of by what was said in the preceding case.

In *Taylor et al.* v. *United States,** foreign invoices relating to goods other than those of the claimant, and received by other merchants, were admitted to rebut the evidence given by the claimant of a general usage to allow a deduction of five per cent. for measurement—those invoices showing no such allowance—and a foreign letter attached to one of the invoices, though objected to, was also received. This court approved the ruling of the court below. In the case of *Cliquot's Champagne*, just decided, we held that the answer of a dealer, and a Price-Current, relative to the prices of his wines, given by him to a witness, were competent evidence.

In *Doe* d. *Patteshall* v. *Turford*,† it was held by the King's Bench, that the entry by an attorney of the service on a tenant of a notice to quit, made in the ordinary course of his business, was admissible. In *Stapylton* v. *Clough*‡ a like entry made by an attorney's clerk, contemporaneously with the service, was held to be admissible for the same reasons; but the after parol declaration of the clerk, offered to contradict the entry, was rejected. In this case Lord Campbell said, "I entirely approve of the decision in *Doe* d. *Patteshall* v. *Turford*, and the cases decided upon the same principle. They lead to the admission of sincere evidence, and aid in the investigation of truth."

In *Carrol* v. *Tyler*,§ in *Sherman* v. *Crosby*,‖ and in *Shearman* v. *Akens*¶—cases in Maryland, New York, and Massachusetts—the receipts of third persons for money paid to them by one of the parties to the suit were received in evidence without the presence of the persons by whom the receipts were given. In *Holladay, Executor of Littlepage*, v. *Littlepage*,** in the Supreme Court of Appeals in Virginia, the parol declaration by a third person of such payment was admitted. In *Alston* v. *Taylor*,†† in North Carolina, a receipt given by an attorney of another State for certain claims placed in his hands for collection was held to be admissible, to show the

---

* 3 Howard, 210.                      † 3 Barnwell & Adolphus, 890.
‡ 22 English Law and Equity, 276.    § 2 Harris & Gill, 56.
‖ 11 Johnson, 70.                    ¶ 4 Pickering, 283.
** 2 Mumford, 316.                   †† 1 Haywood, 395, note.

time at which he received the claims. In *Prather* v. *Johnson*,* the Court of Appeals of Maryland said: " If A., as surety of B., pays a debt due to C., on proof of the payment, A. could recover of B.   He could recover on C.'s *saying* he had paid, and of course if C. *wrote* that A. had paid, surely it is evidence whether the writing is *in a book* or *a letter*."

We think the letters in question in this case were properly admitted. In reaching this conclusion we do not go beyond the verge of the authorities to which we have referred.   In some of those cases the person asserted to be necessary as a witness was dead.   But that can make no difference in the result.† The rule rests upon the consideration that the entry, other writing, or parol declaration of the author, was within his ordinary business.   In most cases he must make the entry contemporaneously with the occurrence to which it relates.‡   In all he has full knowledge, no motive to false-hood, and there is the strongest improbability of untruth. Safer sanctions rarely surround the testimony of a witness examined under oath.   The rule is as firmly fixed as the more general rule to which it is an exception.  Modern legis-lation has largely and wisely liberalized the law of evidence.

We feel no disposition to contract the just operation of the rule here under consideration.

JUDGMENT AFFIRMED.

Justices WAYNE, CLIFFORD, and DAVIS declared their inability to assent to so much of the preceding opinion as decides that the letters, written by third persons and addressed to third persons, were properly admitted in evi-dence.

---

* 3 Harris & Johnson, 487.

† 1 Greenleaf on Evidence, § 120; Holladay *v.* Littlepage, 2 **Mumford,** 821.

‡ Stapylton *v.* Clough, 22 E. L. & E. 276.