HARRY W. LINK, an Infant, by Guardian, etc., Respondent,
v. JAY W. SHELDON et al., Appellants.

It is not necessary in order to sustain an action against a physician or surgeon to recover damages for unskillfulness or negligence, to prove gross culpability on the part of defendant; proof of any failure to exercise proper care or of any neglect in discharging the duty assumed is sufficient.

In such an action it is competent to prove complaints of pains and suffering made by plaintiff to an attending physician with a view to have him relieve them.

An objection to a question to a witness made after the answer has been received is not available; the remedy is to move to strike out the answer.

It is not competent for a medical expert, as a witness, to pass upon or draw inferences from evidence given in the case by another witness; his testimony must be confined to answers to questions which contain in themselves the facts assumed to be proved and upon which his opinion is desired.

In an action to recover damages for malpractice in the treatment of a broken arm, one of the grounds of complaint was negligence on the part of defendants in not redressing the arm within a certain time. D., a physician, called in after defendants' discharge, testified to the condition of the arm. A medical expert called by defendants was asked if he could trace any of the results he had heard testified to by D. to the lack of redressing. This was objected to and excluded. *Held*, no error.

The fracture was claimed to be what is known as "Colles' fracture;" one of the defendants testified as a witness in his own behalf that he had

treated a number of cases of such fractures, he was then asked: "With. what results?" This was objected to and excluded. *Held*, no error.

Where a request to charge has been substantially covered by the charge made, or when it assumes the existence of facts in issue and upon which the evidence is conflicting, a refusal of the request is not error.

(Argued October 13, 1892; decided November 29, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made April 26, 1892, which affirmed a judgment in favor of plaintiff, entered upon a verdict and affirmed an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*T. K. Fuller* for appellant. In an action to recover damages for alleged negligence causing a personal injury, declarations of the party injured, made after the injury, to the effect that he is suffering pain and what kind of pain, not made to a physician for the purpose of professional attendance, are not competent as evidence. (*Ryan* v. *P. M. Co.*, 57 Hun, 253 ; *Olp* v. *Gardner*, 48 id. 169 ; *Roche* v. *B. C., etc., R. R. Co.*, 105 N. Y. 294.) Where there is no method of procedure which is so universally adopted by the medical profession in the treatment of a given fracture as to become a law in the profession, it is proper to prove by expert witnesses what is the proper treatment. (Wood on Mast. & Serv. § 177 ; *Leighton* v. *Sargent*, 27 N. H. 460.) The question, " Would you trace any of the results which you have heard testified to by Dr. Doyle, to the lack of redressing on Monday night ? " was incompetent. (*Seymour* v. *Fellows*, 77 N. Y. 178 ; *McCollum* v. *Seward*, 62 id. 316 ; *Turner* v. *City of Newburgh*, 109 id. 301–308.) The experience, knowledge and skill of the defendants, as surgeons, constituted one of the issues in this case. Dr. Sheldon testified that he had treated some twenty-five or thirty cases of Colles' fracture. The question was then asked him, " And with what result ? " This was proper. (*Carpenter* v. *Blake*, 50 N. Y. 696.) The motion to nonsuit should have

been granted. (*Searles* v. *M. R. R. Co.*, 101 N. Y. 661; *Hibbard* v. *Thompson*, 109 Mass. 286; *Potter* v. *Warner*, 91 Penn. 362; *Wells* v. *W. D. M. A.*, 120 N. Y. 630; *Dwight* v. *G. L. Ins. Co.*, 103 id. 341, 358; *Strohm* v. *N. Y., L. E. & W. R. R. Co.*, 96 id. 305; *Smith* v. *Dumont*, 25 N. Y. S. R. 382; *Dubois* v. *Decker*, 22 id. 274.) Defendant's counsel asked the court to charge: "If the jury find that the stiffness of the thumb resulted from its changed position from which the defendants left it, then the defendants are not liable." This request was refused. This was error. (*Searles* v. *M. R. R. Co.*, 101 N. Y. 661.) Defendant's counsel asked the court to charge: "If the jury find from the evidence that the results complained of were not wholly caused by what the defendants did, or failed to do, the plaintiff cannot recover." The court erroneously declined to charge as requested. (*Searles* v. *M. R. R. Co.*, 101 N. Y. 661.) Surgeons do not warrant a cure, nor perfect results; neither are they liable for the natural or inevitable consequences of a serious injury. (*Boldt* v. *Murray*, 2 N. Y. S. R. 232; Wood on Mast. & Serv. chap. 6.) The defendants' negligence must be the proximate cause of the result complained of. (1 S. & R. on Neg. § 26; Cooley on Torts, 68, 69, 70; *Searles* v. *M. R. R. Co.*, 101 N. Y. 661; *Taylor* v. *City of Yonkers*, 105 id. 203.)

*William Nottingham* for respondent. In assuming the treatment of a patient there is an implied undertaking on the part of the physician or surgeon, that he has a reasonable degree of learning and skill such as is generally possessed by the members of his profession, and that he will employ ordinary and reasonable care and diligence in the application of that knowledge and skill to the treatment of the case in hand. In case of his default in either of the above requirements he is responsible to the patient for any injury that may result therefrom. (*Carpenter* v. *Blake*, 10 Hun, 358; 75 N. Y. 12; *Leighton* v. *Sargeant*, 7 Foster, 460; *DuBois* v. *Decker*, 130 N. Y. 325.) The objection, not made until all the evidence referred to was in, is unavailable. (*Quinn* v. *Lloyd*, 41 N. Y. 349; *Brad-*

ner v. *Strang,* 89 id. 299, 307; *Miller* v. *Montgomery,* 78 id. 283, 286; *Perry* v. *People,* 86 id. 353, 358; *People* v. *Crounse,* 51 Hun, 489; *Platner* v. *Platner,* 78 N. Y. 90; *Hickenbottom* v. *D., L. & W. R. R. Co.,* 122 id. 91, 98; *Shepard* v. *N. Y. E. R. R. Co.,* 39 N. Y. S. R. 430; *Levin* v. *Russell,* 42 N. Y. 251.) Exclamations of pain made by the plaintiff are clearly admissible. (*Hagenlocher* v. *C. I. & B. R. R. R. Co.,* 99 N Y. 136; *Bardin* v. *Stevenson,* 75 id. 164.) If a question propounded is not answered, but waived, and is subsequently renewed, the objection must be renewed to be available. (*Wagner* v. *Jones,* 77 N. Y. 590; *Roache* v. *B. C. R. R Co.,* 105 id. 294; *Ryan* v. *P. M. Co.,* 57 Hun, 253; *Kennedy* v. *R. C. & B. R. R. Co.,* 130 N. Y. 654.) General reputation cannot be sustained nor impeached by specific acts, and much less by a narration of his own achievements by the party himself (*Carpenter* v. *Blake,* 10 Hun, 358, 360; 75 N Y. 12; *Bakeman* v. *Rose,* 14 Wend. 110, 111; *Corning* v. *Corning,* 6 N. Y. 104.) The question as to tracing any of the results testified to by Dr. Doyle to the lack of redressing on Monday night was improper. (*People* v. *McIlvaine,* 121 N. Y. 250; *Guiterman* v. *L., etc., S. Co.,* 83 id. 358; *Reynolds* v. *Robinson,* 64 id. 589; *Dalz* v. *Norris,* 10 Hun, 201; *Gregory* v. *N. Y., L. E. & W. R. R. Co.,* 55 id. 303.)

Gray, J. The action was brought against certain physicians to recover damages for their unskillfulness, or their negligence, in the treatment of the plaintiff for a fracture of the bones of his right forearm; whereby his hand was permanently deformed, in part, and a verdict was recovered of $4,000; which recovery the General Term has affirmed. The apparent severity of the verdict, the nature of the issue which involved the question of the competency of defendants as medical practitioners, and the earnestness with which the appellants have insisted upon the commission of errors upon the trial, have caused us to carefully examine and consider this record and its questions.

Although the plaintiff had shown that he may permanently

suffer from a crippled hand, we, nevertheless, think that there was enough before the trial judge and the court at General Term, in the nature of the accident, in the conflict of professional opinions as to the treatment, and in the possible doubt which overhung the case that the distortion of the hand was not wholly due to the malpractice charged against defendants, but might have resulted in any event, as to have justified an interference with the verdict on the ground of its excessiveness. There was latitude for the entertainment of a doubt concerning the treatment of the case and the final result complained of, which would not have subjected a reduction of the recovery by the General Term to criticism as being without adequate grounds. The practice of surgery must always admit of some doubt as to ulterior complete success. But, however that may be, the decision of the tribunals below in that respect is final; the doubt was resolved adversely to defendants and this court is without power to review the determination as to the amount of the damages awarded. (*Oldfield* v. *N. Y. & H. R. R. Co*, 14 N. Y. 310, 321 ; *Gale* v. *N. Y. C. & H. R. R. R. Co.*, 76 id. 594.)

The defendant moved upon several grounds for a nonsuit, which may be, in effect, resumed in the statement that the plaintiff had failed to show that his crippled condition is the result of want of knowledge, or skill, or of any negligence on the part of the defendants; or that it was not caused by either his own neglect, or that of his parents ; or that it was not attributable to the subsequent mismanagement of the case by the physician called in to take charge of it.

Briefly stated, the facts were that plaintiff, a lad of thirteen years of age, while playing in a hay loft, fell through an opening and upon the barn floor; striking with such force upon his hand and forearm as to produce what is known by the surgical term of a Colles' fracture of the large bone of the arm near the wrist joint, with a dislocation of the smaller bone. The defendants, one of whom had long attended upon the lad's family, were called in. They dressed the wounded parts and placed a splint to hold the bones in place. The accident

occurred on a Friday and the management of the case by the defendants continued from that day until the following Monday evening; Dr. Doyle, another physician, being called in by the lad's parents on Tuesday morning.

Over the methods of the defendants, in treating the wound and in bandaging the arm and hand, a severe controversy was waged; it being claimed by the plaintiff that the treatment was unskillful and grossly negligent, while for the defense it was claimed that the treatment was such as the peculiar nature of the wound called for, and that the bad condition into which the plaintiff fell on Monday and Tuesday was due to a refusal on the part of his parents to permit defendants to seasonably redress the hand on Monday evening. It appears that the plaintiff's parents became dissatisfied with the defendants' treatment of the case, and, hearing of Dr. Doyle's success in the case of some acquaintance, dismissed the defendants on Tuesday morning and called in Dr. Doyle.

The points made for the plaintiff were that the accident having caused an ordinary Colles' fracture, a certain metallic splint used should have been adjusted to the palmar surface of the hand, instead of upon its back, and that the bandaging of hand and arm had been so tight as, by such ignorant and neglectful treatment, to cause an inflammation and resultant suppuration, which, in the healing, drew in the thumb and permanently deformed the hand. The defendants testified that the fracture, though similar to that known as Colles' fracture, had so reversed the position of the bones, that the splint had to be used as it was placed by them; that the physical condition of the patient, in addition, was bad from feverishness; that the bandages were rightly adjusted; that the great inflammation, discovered when Dr. Doyle was called in, was due to their having been prevented from redressing the wound for many hours, and, finally, that had the succeeding physician properly treated the hand in its inflamed and swollen condition by lancing instead of by poulticing, no distorted condition of the hand would have resulted.

Medical experts were examined in support of the plaintiff's

and defendants' positions, and, when the evidence was all in, the case was such as to present purely questions of fact for the determination of the jury. If they believed that it was an ordinary Colles' fracture, then the weight of the skilled evidence, if not all of it, showed that the metallic splint used upon the occasion was wrongly adjusted and not fitted for use in the particular way adopted by defendants. If they believed that the defendants ignorantly and unskillfully used this splint and neglected to bandage and to compress the parts in such wise as to permit of circulation and to prevent inflammatory action, and that the maimed condition of the hand was due to such unskillful, or neglectful treatment of the case, and was not caused by the subsequent treatment by Dr. Doyle, then the plaintiff was entitled to a verdict. If they believed that the defendants understood and properly managed the case and that the resultant distortion was due either to some interference with their treatment, or to the malpractice of the succeeding physician, the defendants were entitled to a verdict. The evidence upon the material points was conflicting. There was more or less disagreement among the doctors; but it is impossible to say that there was not evidence tending to establish a lack of skill, or some neglect, on the part of the defendants. It was not necessary, in order to sustain the action, that there should have been proof of gross culpability upon the part of the defendants. It was sufficient, to warrant a verdict against them, that there was evidence of any failure on their part to exercise proper care, or of any neglect in the discharge of the duty they had assumed towards the plaintiff. (*Carpenter* v. *Blake*, 75 N. Y. 12.)

The recovery, therefore, must stand; unless there were any such errors committed upon the trial as would justify us in awarding to plaintiff a new trial of the action.

The charge itself was so fair as to call for the approval of the defendants' counsel; but he presented requests to charge, some of which were refused and the refusals were excepted to.

The only ruling we deem it necessary to advert to, in that connection, is upon a request to charge " that if the jury find

from the evidence that the position and stiffness of the thumb was caused by the abscess spoken of by Dr. Doyle, in the palm of the hand, which was not opened by him, but allowed to gather and break and destroy the muscles and tissues in that vicinity, the defendants are not liable therefor." The trial judge declined to so charge, adding, " that is a question of fact." In the main charge he had very explicitly instructed the jury that their verdict could not be for the plaintiff, if the evidence satisfied them that the treatment of Dr. Doyle, after he took charge, was not proper, and that want of proper practice on his part had contributed to bring about the condition of the hand. Just before the request was presented, he had charged for the defendants, upon their request, that " if the jury find, from the evidence, that it is just as probable that the injury complained of was caused either by the original severe injury, or by the interference of the plaintiff's parents, or by the subsequent manipulations and treatment of Dr. Doyle and others, as from the pretended tight bandaging, it is the duty of the jury to find a verdict for the defendants."

The defendants had had the benefit of a fair charge upon the question of where the responsibility should rest, as to where it ceased for them and began with Dr. Doyle ; and the trial judge had just ruled, upon their express request, that the existence of any probability that the injury may have been as much caused by Dr. Doyle's treatment would warrant their exoneration by the jury, and they cannot be heard to insist that it was prejudicial error to refuse the subsequent request, which had not only been covered, but, in its form, tended to an assumption of a fact which was in issue. That is, the request seemed to assume that the destruction of the muscles and tissues of the hand was due to Dr. Doyle's failure to lance the swelling, whereas the precise question for the jury was whether that destruction of muscle and tissue was the result of a condition brought about by the defendants, or by the bad management of Dr. Doyle, after he had assumed charge. We think there was no error in the ruling upon the request.

Plaintiff's father had testified as to the lad's sufferings, and

he was asked : " Did he continue these complaints ? " to which he answered : " Just the same ; this burning, terrible pain." The defendants' counsel then objected " to that class of evidence ; " the court overruled and counsel excepted. I think that the evidence was unobjectionable, for they were complaints which were communicated to the attending physician with the view of having him relieve the tight bandaging ; but, even if the evidence was improperly introduced, it was too late to interpose the objection after the answer had been made. The remedy was to move to strike out the evidence. To similar questions, subsequently objected to, no answer appears to have been given.

A medical expert, being examined as a witness for the defendants, had answered a hypothetical question upon an assumed case, and which involved the consequences to the hand of not redressing it within a certain period of time. He was then asked by defendants' counsel : " Could you trace any of the results, which you have heard testified to by Dr. Doyle, to the lack of redressing on Monday night ? " An objection to the evidence was sustained and an exception taken. Dr. Doyle was called in, in the place of the defendants, and he had testified to the case, his treatment of it, and as to the condition of the hand. The medical expert witness, to whom this question was put, knew nothing of the case, and had testified hypothetically. To have answered the question would have required him to pass upon, or to draw inferences from, the evidence given in the case by another witness, and that would have been clearly improper within the authorities. (*Reynolds* v. *Robinson,* 64 N. Y. 589 , *Guiterman* v. *Liverpool S. S. Co.,* 83 id. 358.) An expert witness should be confined to questions which contain in themselves the facts assumed to be proven, and upon which his opinion is desired.

One of the defendants had testified as to his qualifications, his studies and his practice, and had said that he had had a number of cases of what is known as Colles' fracture. He was then asked : "And with what results ? " The evidence was properly excluded upon objection. An answer would not have tended

to enlighten the jury as to his treatment of the present case. The question they were called to pass upon concerned the performance of the defendants' duty in caring for the plaintiff, and that was to be decided upon a consideration of the evidence of what they did, or did not do. It was competent to testify to the proper practice in such cases, as pursued from study, or established by experience; but it was quite immaterial and irrelevant what, in the cases the defendant had had in the course of his practice, the general results had been. If in every one he had been successful, that could not affect the issue as to the exercise of proper care and skill in the particular case. If it was intended to fortify their case by showing to the jury the reputation of the witness, it was not the way to do so by particular cases in his past practice.

Other questions, raised by exceptions, as were these in fact, were properly disposed of by the court at General Term.

We are unable to discover the commission of any error which would warrant our reversing the judgments below, and they must, therefore, be affirmed, with costs.

All concur.

Judgments affirmed.