IRVING TRUST CO. v. JACOB WECKSTEIN. & SONS, Inc.

SAME v. EITINGON SCHILD CO., Inc.

Nos. 224, 225.

Circuit Court of Appeals, Second Circuit.

334

Barron, Rice & Rockmore, of New York City (Murray H. Marker, Daniel Katz, and George P. Halperin, all of New York City, of counsel), for appellants.

Samuel Sturtz, of New York City (Richard J. Mackey, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

Margulies & Ratner, Inc., a corporation engaged in the buying and selling of furs, was adjudicated bankrupt upon an involuntary petition filed on April 13, 1930. During the month of January, 1930, the bankrupt transferred to each of the defendants certain money and merchandise in payment of notes, which they, respectively, held, although its notes had not yet become due. The circumstances were such as to render the transfers voidable preferences according to the findings of the court below, and decrees were entered setting them aside. These appeals challenge the decrees upon two grounds: (1) That the evidence will not support the finding of insolvency of the bankrupt on the dates of its transfers; and (2) that the court erred in admitting in evidence an accountant's report showing the bankrupt's financial condition on February 5, 1930.

Convenience will be served by treating these contentions in inverse order, because the proof of insolvency will necessarily fail if the accountant's report must be excluded. It is contended that no proper foundation was laid for the report by first introducing the bankrupt's books. The accountant, Mr. Klein, testified to examining the books, preparing his report as of February 5, 1930. The report was then offered in evidence and objected to upon the ground that "no proper foundation has been laid." The defendants' solicitor explained that he meant by that objection that "there is no testimony that the contents of that report accurately reflects the statement of each asset and liability that appears." The witness thereupon testified that it did. Counsel then objected on another ground, that it was prepared at a date subsequent to the transfers attacked as preferences; and this was the only ground mentioned when he renewed his objection to the use of the report in the other suit (fol. 316). The books were present in court, and counsel should have pressed his objection that they had not been put in evidence, if he meant to insist upon it. On a similar objection with respect to Klein's testimony as to what the books showed concerning the payment of notes, when the books were about to be offered, he did not insist that they go in (fols. 216–218). We think it clear that the objection now urged was not pressed below. Indeed, no assignment of error mentions it. The contention is plainly an afterthought, and cannot now be successfully raised.

Although the claims against the bankrupt estate show liabilities in excess of $53,000 and the total assets collected by the trustee are only about $3,400, the appellants earnestly argue that the bankrupt was actually solvent during the month of January, 1930, when the transfers under attack were made. Accountant Klein audited its books as of February 5, 1930, and testified that its financial condition as shown by its books was substantially the same during the preceding month. From his audit it appears that the books showed a surplus worth of $28,115.89, so that it is only by a shrinkage of book values that insolvency was made to appear. It is the evidence in support of such shrinkage that the appellants challenge.

The chief item relates to notes of Weinschenker Bros., Inc., which the bankrupt held in the amount of $43,159.11, constituting its main asset. Equity receivers had been appointed for the Weinschenker corporation on December 21, 1929, and accountant Klein in his report valued these notes at only 30 per

cent. of their face. In fact, the dividend realized by creditors of Weinschenker Bros. was only 6.7 per cent., but the contention is that in January, 1930, its notes must be deemed worth substantially their face value.

There are two branches to the argument, the first involving an alleged right of set-off in the bankrupt to the extent of its obligation on notes payable to Weinschenker Bros. in the sum of $28,601.02. If this contention were upheld, the bankrupt's claims against Weinschenker would wipe out Weinschenker's claims against the bankrupt dollar for dollar, and the shrinkage of the bankrupt's assets would be materially lessened. The bankrupt had discounted or pledged all its Weinschenker notes except $12,337.11. Consequently the claim of set-off could not be valid in any event in a larger sum than this. But we think it must be disallowed entirely. The bankrupt's right of set-off would be available against an equivalent liability on its own notes payable to Weinschenker only in the event that the latter still held them. To what extent, if any, Weinschenker retained the bankrupt's notes the record does not disclose. It does show that about 75 per cent. of Weinschenker's notes receivable, amounting to some $400,000, had been discounted and transferred, and that at least $18,000 of the bankrupt's notes had been so disposed of by them. We cannot assume that the balance remained in Weinschenker's possession. The reason for this gap in the evidence seems to be that the issue of set-off was not raised in the court below. The plaintiff's prima facie case required that it show an excess of liabilities over assets taken at a fair valuation. If such a showing has been made, the burden of proving insolvency has been sustained, and the appellants cannot expect us to reverse a finding in the plaintiff's favor without producing evidence of a situation clearly requiring the allowance of a set-off. As already stated, such evidence as appears tends to negative the claim of set-off. Consequently we conclude that no set-off is allowable, and the evidence offered by the plaintiff to prove shrinkage will be considered as going to all the Weinschenker notes payable to the bankrupt.

This brings us to the second branch of the argument relating to the issue of insolvency. In his report Klein valued these notes at 30 per cent. of their face. This valuation would show a condition of insolvency without considering any other item of shrinkage. There was, however, an additional item of $9,-159.58 called "Investments Mandell-Margulies, Inc.," and another of about $800 for furniture, both of which the accountant wrote off. The appellants' brief makes no mention of these items; their complaint is solely of the shrinkage of the Weinschenker notes. On cross-examination Klein admitted that he knew nothing of the financial position of Weinschenker Bros. except that an equity receiver had been appointed to liquidate their assets, consisting mainly of merchandise and claims against other firms. There was considerable testimony that conditions in the fur trade were not healthy in December, 1929, and grew progressively worse; many fur concerns were in difficulties. Klein's estimate was based upon the foregoing information and upon his knowledge that recoveries from insolvencies in the fur trade had rarely exceeded 30 to 40 per cent., though he had "heard of them paying 50 cents." It is clearly proper to value the notes of a debtor already in receivership at less than their face. Klein's experience and general information concerning conditions in the fur trade in the winter of 1930 and concerning the general opinion of the trade as to Weinschenker Bros., qualified him to form an opinion as to the fair value of their notes; while not worth as much as if founded upon an examination of their assets and liabilities, we think it was not wholly without probative value. Furthermore, it finds some support from other facts in the record. In December, 1929, Weinschenker Bros. refused to make an offer of settlement with their creditors because of the uncertainty of their contingent liabilities which totaled more than $400,000. About three months later, however, they offered their creditors only 25 per cent., partly in cash and partly in notes. In addition is the fact, already stated, that the notes ultimately realized only 6.7 per cent. Of course the notes must be valued at what they were reasonably worth at the time of the transfers, not at what they ultimately paid out in bankruptcy. Everett v. Warfield Mining Co., 37 F.(2d) 328 (C. C. A. 4). But the fact that they ultimately paid so little and that the debtor considered them worth only 25 per cent. two months after the critical date we regard as supporting evidence that in January, 1930, they were not reasonably worth more than the value Klein ascribed to them. See In re Bloch, 109 F. 790, 793 (C. C. A. 2). We think the record will sustain the court's finding of insolvency.

Accordingly the order is affirmed.