## UNITED STATES v. ALUMINUM CO. OF AMERICA et al.

District Court, S. D. New York.

Nov. 15, 1940.

Walter L. Rice, Sp. Asst. to Atty. Gen. (Thurman Arnold, John C. Herberg, and F. Gwyn Harper, Jr., all of Washington, D. C., Norman A. Adler, of New York City, and James S. Kemper, Jr., Ralph Andresen, Creighton R. Coleman, and Gareth M. Neville, all of Washington, D. C., of counsel), for the United States.

Hughes, Richards, Hubbard & Ewing, of New York City, and Smith, Buchanan & Ingersoll, of Pittsburgh, Pa. (Charles E. Hughes, Jr., Leighton H. Surbeck, and William T. Gossett, all of New York City, and William Watson Smith, Frank B. Ingersoll, and Leon E. Hickman, all of Pittsburgh, Pa., of counsel), for Aluminum Co. of America and others.

Milbank, Tweed & Hope, of New York City (Morris Hadley, Timothy N. Pfeiffer, and Edgar P. Baker, all of New York City, of counsel), for Aluminium Limited and others.

Baldwin, Todd & Young, of New York City (Roger Sherman Baldwin and Walter W. K. Bennett, both of New York City, and A. L. Nash, of Manitowoc, Wis., of counsel), for Aluminum Goods Mfg. Co.

Hughes, Richards, Hubbard & Ewing, of New York City (Charles E. Hughes, Jr., Leighton H. Surbeck, and William T. Gossett, all of New York City, and John H. Watson, Jr., and M. B. & H. H. Johnson, all of Cleveland, Ohio, of counsel), for Aluminum Manufactures, Inc.

CAFFEY, District Judge.

One of the law questions presented has perplexed me. For that reason I have felt compelled to put considerable time on it.

I am not yet wholly confident that I am right in the conclusion I have reached. I am not in doubt as to what the law on the point should be, but my hesitation as to how I should hold has been due chiefly to the condition of the authorities. As I believe will be sufficiently brought out by the discussion which follows, the difficulties with which I have struggled are two: (1) Paucity of relevant court decisions. (2) With great deference, lack of sufficient clarity in most of those cited to enable one to make ready use of them as precedents for determining the particular question I must pass on.

At the trial rulings were reserved on Government motions to strike out 746 items of evidence. These are specified in four exhibits for identification,—26 in Exhibit 1671, 28 in Exhibit 1681 and 692 in Exhibit 1799 (the items in 1799 consisting of 8 exhibits and 684 pieces of oral testimony). Alcoa moved to strike out one item, specified in Exhibit 1798 for identification. With respect to that also decision was reserved.

The evidence with which this memorandum will deal came in from Messrs. Lawrence Litchfield, Jr., and George C. Branner, witnesses for Alcoa. Their testimony related largely to bauxite deposits in Arkansas (owned or controlled by Alcoa and by others as of a common date and being of a certain standard). For the purpose of determining what is the controlling law it will be simpler to confine consideration to evidence concerning deposits in Arkansas. This is permissible because, in so far as pertinent here, in handling the entire 747 items, the same evidence rules can be applied to testimony about deposits wherever located.

It is agreed by both sides, and I am convinced, that the witnesses are thoroughly qualified experts on subjects relating to bauxite. There is, and there should be, no criticism of their capacity. Their testimony covers upwards of 1,900 pages of the minutes. The dispute is confined, however, to quite limited parts of it.

Moreover, it should be noted that we are not concerned solely with the sizes of deposits, irrespective of their grade or grades. On the contrary, the controversy is as to the amounts of ore of a single definite grade (which, for convenience, counsel have spoken of as aluminum grade). In the present state of the art, in order to be available commercially for making aluminum (that is, to be of aluminum grade), bauxite must contain not less than 55 per cent of alumina and not exceeding 7 per cent of silica. If not within those limits, the expense of production, if not prohibitive, at least would make use of it uneconomical. This memorandum will deal only with ore which, because it is of the standard stated, is fit for manufacturing aluminum as the industry is now conducted in the United States.

That the aid of experts is essential to the solution of the problem is manifest and is recognized by counsel. In Arkansas, and alike elsewhere throughout the world, a great part of the ore is found at varying distances below the surface of the earth. Until uncovered by digging or drilling or blasting, it is hidden from visual inspection. Save for occasional outcrops or for

samples or veins which may be seen in the floor or walls of mines or samples which may be obtained by test pitting or by boring, the ore itself cannot be examined previous to extraction from underground. Its qualities are determinable only by trained and experienced persons. Its chemical composition is ascertainable only through tests by those skilled in measuring the percentage contents of alumina and silica, as well as in identifying and measuring other elements of the ore.

The questions raised by the Government motions are whether the assailed portions of what was said by or of documents prepared by, or prepared by others and used by, the experts named while on the stand are competent. The issues are whether such portions are inadmissible either because of being or relying on hearsay or because their admission would violate the best evidence rule.

In paragraph 43 of the bill it is alleged that Alcoa, through a wholly-owned subsidiary, owns or holds more than 90 per cent of the bauxite deposits in the United States commercially suitable for the production of aluminum. In its answer Alcoa denies this.

So far as I can discover, or has been called to my attention, the only testimony offered by the Government, as part of its case in chief, in support of its charge is that of Mr. Joseph E. Uihlein (minutes, pp. 5878–80, 6209). In substance, his statement was that Alcoa owned all the bauxite deposits in the United States. However, he furnished no support for his statement nor did he claim to be an expert nor did he mention any basis for his information. Accordingly, in connection with the instant problem we may properly ignore what he said.

Alcoa argues that the testimony of Mr. Uihlein was incompetent and that, for this reason, it became entitled to introduce incompetent testimony in rebuttal. Cf. Bradley v. Adams Express Co., 6 Cir., 89 F.2d 641, 642, and cases cited; 1 Wigmore on Evidence, 3rd Ed., sec. 15. This contention does not go to the merits, however, and I shall not pursue it. I prefer to base my holding on entirely different grounds.

I believe it would be impossible fairly to pass on the Government motions without scrutinizing everything in the record bearing on the 746 items to which they relate. While these roughly fall into classes, I think the differences in proof affecting them demand separate individual consideration of each.

As will appear from the minutes, much of what is objected to rests on personal observation of the witnesses or on evidence which indisputably is the best (sometimes called primary). Manifestly, items consisting of or supported by proof of that nature are unobjectionable. In so far, therefore, as that is true with respect to what is covered by individual items, the motions to strike them must fail. Disposition of them may be tedious, but will require only care in going over the record. With respect to them there is no legal difficulty. We need only to consider the facts.

There is a second class of items, however, the objections to which are claims that in their support no evidence or no sufficient evidence on personal knowledge or at first hand has been given and that, wholly or partly, they rest on hearsay or that their coming in would infringe the best evidence rule. In consequence, in order properly to apply the law to the motions in regard to the second class items, the controlling rules of evidence must be ascertained with precision.

Otherwise put, the task of the court is to decide two kinds of motions. The first group seeks elimination of evidence which, in the way above explained, mere examination of the record will demonstrate incontrovertibly is competent. The second group seeks elimination of opinion evidence which is charged to rest, wholly or partly, on hearsay or on secondary evidence (the terminology secondary evidence being sometimes herein employed to contradistinguish it from evidence which is best or primary).

For the retention of items of the first group manifestly it will be enough if, as a fact, there is support for them in the record without the use of hearsay or of secondary evidence. Only as to the second group is there occasion to apply the rules of evidence prescribing the extent, if any, to which expert testimony is admissible when based, wholly or partly, on what under the general law of evidence is hearsay or secondary. Only in connection with that group need we deal with law questions. It seems to me, therefore, that such questions in reference to that group had best be discussed before we go into the details of the 746 motions.

As has been pointed out, the two objections advanced in argument are (1) that some of the evidence is hearsay and (2)

that some is secondary. To ascertain whether either objection is well founded different criterions must be employed. Hence the problems must be considered separately. Accordingly, we shall first take up the hearsay objection. When that has been disposed of, the best evidence rule objection will be dealt with.

Soon after Mr. Litchfield took the stand a dispute arose as to the exact terms of the rule under which hearsay is admissible or, as sometimes phrased, under which there is an exception to the hearsay rule. The disagreement has persisted ever since and there has been much debate about it. After examining all the cases cited by counsel, I confess that I have found no single one which, taken apart by itself, seems to me adequate to furnish an invariable guide to an answer which is applicable to all items embraced in the second group of motions. Nevertheless, I do feel that decisions of courts to which I owe obedience, when taken together, have established a principle which, standing alone, is enough for the purpose.

■ As I conceive, the law on the point may be briefly stated thus: Opinion testimony by an acceptable expert resting wholly or partly on information, oral or documentary, recited by him as gathered from others, which is trustworthy and which is practically unobtainable by other means, is competent even though the firsthand sources from which the information came be not produced in court. With respect to the matter, in what impresses me as unambiguous authoritative judicial language, it has been said that "the requisites of an exception of the hearsay rule" are "necessity and circumstantial guaranty of trustworthiness." G. & C. Merriam Co. v. Syndicate Pub. Co., 2 Cir., 207 F. 515, 518. In other words, when hearsay evidence is offered it is admissible if resort to it be essential in order to discover the truth and if the surroundings persuade the court that the information adduced by the expert as a basis of his opinion is reliable.

I feel that a good many decisions by courts to which I owe obedience tend to support, and when taken together do support, the rule laid down in the Merriam case. Among such decisions those by the Supreme Court of the United States are Cliquot's Champagne, 3 Wall. 114, 140, 141, 18 L.Ed. 116; Fennerstein's Champagne, 3 Wall. 145, 146–149, 18 L.Ed. 121, and Grayson v. Lynch, 163 U.S. 468, 480, 481,

16 S.Ct. 1064, 41 L.Ed. 230; those by the Circuit Court of Appeals for the Second Circuit are Western Assur. Co. v. J. H. Mohlman & Co., 83 F. 811, 820–822, 40 L. R.A. 561, and Irving Trust Co. v. Jacob Weckstein & Sons, 64 F.2d 333, 335; and those by New York courts of general jurisdiction are Lush v. Druse, 4 Wend. 313, 317, Pierson v. Hoag, 47 Barb. 243, 246, Slocovich v. Orient Mut. Ins. Co., 108 N.Y. 56, 62–64, 14 N.E. 802, and Gutkind v. Lueders & Co., 267 N.Y. 320, 328, 329, 196 N.E. 201. See, also, Meaney v. United States, 2 Cir., 112 F.2d 538; 2 Wigmore on Evidence, 3rd Ed., secs. 665, 665a and 665b.

In the Merriam case the opinion was written by Judge Learned Hand when a District Judge. This was quoted in its entirety and, so far as pertinent here, was "fully" approved by the appellate court. He failed to find a court opinion directly stating the proposition he announced. His sole reliance was 3 Wigmore on Evidence, 1st Ed., secs. 1421, 1422 and 1690, published in 1913 and still standing without substantial alteration. With immaterial changes, the three sections mentioned have been carried forward in the second edition, published in 1923, and in the third edition, published in 1940.

As will be observed, Judge Hand's test consists of two things. For purposes of identification these may be called (1) necessity and (2) trustworthiness. They will be considered in reverse order.

The second element (namely, trustworthiness) is easy of application (see Wigmore on Evidence, 3rd Ed., Vol. V, sec. 1422; Vol. VI, secs. 1692 and 1702). That the material resorted to by the experts in the case at bar as foundation for their opinions was trustworthy seems to me clear; indeed, so abundantly established by the record as to admit of no real doubt.

With respect to the first element (namely, necessity for using hearsay) there may be room for different views as to how it should be applied and, as I feel, we cannot intelligently or safely apply it unless first we arrive at an exact understanding of what is meant by "necessity." I think, however, particularly as Wigmore was relied on by Judge Hand as support for his statement of the reason of the rule, that we may rely on the learned author for a precise definition.

■ In effect, Wigmore says that, as the word necessity is here used, it is not to be interpreted as uniformly demanding a show-

ing of total inaccessibility of firsthand evidence as a condition precedent to the acceptance of a particular piece of hearsay, but that necessity exists where otherwise great practical inconvenience would be experienced in making the desired proof (Wigmore, 3rd Ed., Vol. V, sec. 1421; Vol. VI, sec. 1702). As will be seen by scrutinizing the cases cited above as being in accord with or supporting the Merriam case, it is inconceivable that what the courts whose decisions control in this court have said can properly be construed as requiring that physical inability be shown in order to establish the type of necessity which constitutes one of the conditions precedent for using hearsay. If it were otherwise, the result would be that the exception created to the hearsay rule would thereby be mostly, if not completely, destroyed.

Perhaps an illustration may further elucidate the situation I am attempting to describe.

One main specific instance in the record of a hearsay objection by the Government is where Alcoa had failed to produce third persons who drilled, or reports by drillers of, test holes showing or laying the basis for determining quality and quantity of bauxite disclosed by the drilling to various distances below the surface on particular tracts of land in Pulaski and Saline counties, Arkansas, referred to as the dumb bell. What are the pertinent facts as to whether non-production should be permitted?

Among the facts for consideration in determining whether hearsay could properly be used are these: In the dumb bell region it is and long has been the general custom to accept such test hole reports as correct without calling the makers to verify them (pp. 36555–61, 37467–9, 37587–99). They spread over many years. They run to large numbers. The makers were numerous and are scattered. In order to supply the needed information direct from persons with first-hand knowledge, or from writings shown to have been made by them, on which to predicate an opinion, it is obvious that practically it would have been a physical impossibility to produce the makers or the documents at the trial of the case at bar. Such circumstances, as I understand Wigmore, are sufficient to constitute necessity, within the sense of the rule, for using hearsay in making proof of what is embodied in the reports.

Consideration of another aspect of the test hole evidence will be helpful. This can best be brought out by examining Exhibit 1684. While what is about to be said bears on the hearsay objection, it may be noted that it also has a bearing on the best evidence rule controversy, later to be taken up.

In Exhibit 1684 the witness tabulated what was shown by records of 605 test holes. When the data assumed that form it was very illuminative. Yet, in effect, the Government urges that it was entitled to have the drillers put on the stand and to have each state what he individually learned from every separate drilling operation. As I conceive, however, Burton v. Driggs, 20 Wall. 125, 136, 22 L.Ed. 299, fully discussed in the minutes at pp. 29601–3 and 31129–34, establishes the legality as evidence of a summary, such as Exhibit 1684, employed to assemble the facts without bringing into court the drillers or, for that matter, the records.

Numerous other illustrations could be gathered from the minutes; but, as I feel, it would be wasteful to go into them. If the controlling principle be made clear, any reader of the record can easily add other examples.

When one reflects on how much time had already been consumed in the trial of this case when the experts were called as witnesses and how much additional time would have been required if they had not been allowed to resort to hearsay, certainly, if there be any discretion vested in the trial judge, it cannot have been error for him to have made "a concession to the shortness of life" such as he did. Cf. United States v. Socony-Vacuum Co., 310 U.S. 150, 230, 60 S.Ct. 811, 848, 84 L.Ed. 1129. But if there exist no such discretion, at least I think it not inapposite to express the view that failure to adopt the rule substantially as I have phrased it would be inconsistent with the fundamental philosophy running through the cases I have cited, more particularly through the opinions of the Second Circuit Court of Appeals.

As I feel also, the rule stated is the unavoidable outcome of analysis of the opinions taken together in combination. Moreover, I believe that maintenance of it is demanded if we are to respect a somewhat general but concrete admonition by the Supreme Court. Funk v. United States, 290 U.S. 371, 381-383, 54 S.Ct. 212, 78 L.Ed. 369; see also Sisson v. Cleveland & Toledo Railroad Co., 14 Mich.

489, 497, 90 Am.Dec. 252, cited with approval in Virginia v. West Virginia, 238 U.S. 202, 212, 35 S.Ct. 795, 59 L.Ed. 1272, and in the Western Assurance Co. case, supra, 83 F. at page 821, 40 L.R.A. 561; Transcontinental Petroleum Co. v. Interocean Oil Co., 8 Cir., 262 F. 278, 282; Valli v. United States, 1 Cir., 94 F.2d 687, 693. In substance, trial courts are there told to be practical and, so far as reasonably possible, to harmonize their evidence rulings with the current habits of the people generally in the communities in which they sit.

The Government urges that the rule in Grayson v. Lynch, supra, applies only to information gathered by Government employees in the course of performing their official duties. Apparently the contention rests on the statement at page 481 of 163 U.S., at page 1069 of 16 S.Ct., 41 L.Ed. 230, that the knowledge of the witnesses, which had been gained by correspondence, could not properly be classed as hearsay, "since it was a part of their official duty to obtain" it.

I confess that, as indicated at the trial, the words last quoted have caused some difficulty for me. After analysis, however, I have concluded that it was not the intention of the court, in application, to confine the evidence rule under discussion there exclusively to public officials.

█ In the first place, I conceive of no reason for discriminating between private individuals and Government employees in formulating a definition of what constitutes inadmissible hearsay. In the second place, in 163 U.S. at page 480, 16 S.Ct. 1064, 41 L.Ed. 230, the acceptance of what the witnesses said they had learned through letters received seems to have been based on the probable impossibility of the proof being made otherwise. In the third place, —perhaps more persuasive than anything else,—none of the four cases cited at page 481 of 163 U.S., at page 1069 of 16 S.Ct., 41 L.Ed. 230, in support of the ruling there made, dealt with public officials at all. I think to construe the Grayson opinion differently than I have done would result in creating, by implication, inharmony between different parts of the same opinion which are capable of reconciliation,—a thing which obviously should be avoided.

Moreover, I find nothing in other decisions of the Supreme Court or in the decisions of the Second Circuit Court of Appeals which justifies imposition on the holding in Grayson v. Lynch, supra, of the restriction the Government advocates.

Next, the Government cites Raub v. Carpenter, 187 U.S. 159, 23 S.Ct. 72, 47 L.Ed. 119, and several New York decisions.

In the Raub case a physician, over objection, gave an opinion about the mental condition of a man and based it partly on personal knowledge which he did not reveal. 187 U.S. page 161, 23 S.Ct. 72, 47 L.Ed. 119. Clearly, as was held, this was error.

Of the New York cases, it would be enough to say that none of them involves the issue in the Merriam case, much less do they contain anything which modifies the rule laid down in the cases from that State cited by me in support of the rule I have adopted. For example, in People v. Nino, 149 N.Y. 317, 326, 327, 43 N.E. 853 (approved in People v. Truck, 170 N.Y. 203, 212, 63 N.E. 281), and in Nazzaro v. Angelilli, 217 App.Div. 415, 216 N.Y.S. 721, as in the Raub case, it was said that opinions should not be expressed when predicated on material not in evidence. So also I find nothing which assists the Government in Link v. Sheldon, 136 N.Y. 1, 9, 32 N.E. 696, or in Marion v. Coon Construction Co., 216 N.Y. 178, 181–183, 110 N.E. 444. Not alone are the rulings remote from the Merriam case, but they are plainly distinguishable on the facts.

█ Parenthetically it may be noted that, as will later appear, I think items 12, 13, 18, 23 and 28 of Exhibit 1681 for identification are inadmissible hearsay or are opinions without support or supported only by inadmissible hearsay. I see no occasion to cite authorities in support of that view and I regard no case cited by Alcoa as being to the contrary. As I see it, the effort of Alcoa is to introduce the opinion of an expert as to the quality or quantity of bauxite in various foreign countries where the sole evidence to show his knowledge of the facts is publications and statements of third persons. While the line of demarcation is hard to draw with accuracy, under the circumstances recited, at least in the way the matter stands in the present record, I think there is nothing shown which is sufficient to constitute the proffered testimony an exception to the hearsay rule nor to bring it within the ground of necessity, which is one of the requisite underlying foundations

of the exception sustained in the Merriam case.

■ That this court is not permitted to take judicial notice of particular facts set out in state publications, as impliedly is requested of it in respect to some items of Exhibit 1799 for identification, seems to me sustained by First National Bank of Wellington v. Chapman, 173 U.S. 205, 217, 19 S.Ct. 407, 43 L.Ed. 669. I shall also apply this case in passing on item 11 of Exhibit 1671 for identification.

There are instances where it is argued that, because the Government has withdrawn objections, Alcoa has become entitled to have other Government objections overruled. The briefs on the subject are too general, however, to enable me, with precision, certainly to identify which specific objection or objections it is urged should be overruled as a consequence of the withdrawal of some other specified objection or objections. Accordingly, I need the further assistance of counsel before I shall feel equipped to take up this phase of the controversy.

In event, after reading my statement, Alcoa still insists on its position just described, within ten days after this memorandum is filed, it may submit a brief setting out its contentions, with particulars of the kind indicated above as being desired. Within ten days after receipt of a copy of such brief, the Government may submit a reply. I do not consider that availing of this leave, however, will be ground for postponing the date for the coming in of the original briefs on the merits, which are due December 2.

We thus come to the second branch of the controversy. The Government argues that the admission of some designated items of evidence would breach the best evidence rule. Alcoa argues that no such issue is presented.

■ It is well settled that a ground of objection not assigned in court at the time the testimony involved was offered is thereafter unavailing. Toplitz v. Hedden, 146 U.S. 252, 255, 13 S.Ct. 70, 36 L.Ed. 961; Boston & A. R. Co. v. O'Reilly, 158 U.S. 334, 335, 15 S.Ct. 830, 39 L.Ed. 1006. In consequence, the first pertinent step is to ascertain whether the Government seasonably urged at the trial that any item of evidence scheduled in Exhibits 1771, 1781 and 1799 for identification was inadmissible because secondary.

Scrutiny of the record will demonstrate that, in opposing none of the items did the Government in terms state at the trial any such ground of objection. At the trial there was no mention of this particular ground as the basis for excluding any evidence which the court is now asked to strike out. The Government does not dispute this. On the other hand, its contention, and in fact the sole contention, urged against the items is that a running objection, which was allowed, of necessity included as one ground a claim that the evidence was not the best. If that contention be not sustained, all motions to strike out evidence on the ground that its admission would violate the best evidence rule must be denied.

On June 19 the running objection was granted to the Government. Mr. Litchfield was on the stand at the time (p. 36691). On July 3, while Mr. Branner was on the stand, the same arrangement was continued as to his testimony (pp. 37426–7, 37433, 37822). On July 8 both sides furnished briefs dealing with objections to the Litchfield testimony (p. 37666). The Government brief did not refer to the best evidence rule nor suggest that its objections rested in any way on an asserted violation of that rule. The taking of testimony was closed August 14 (pp. 40664–5, 40671, 40673). Briefs dealing with the Branner testimony were submitted in September. The Government's September brief contained the first claim in definite language that any of the items sought to be stricken out were inadmissible because they are secondary evidence.

As previously said, the Government's proposition that this ground was interposed at the trial rests exclusively on its insistence that, without mention, it was embraced in the running objection.

The proposal to and the acceptance by counsel on June 19 of the running objection arrangement (pp. 36688–91) grew out of consideration of an objection interposed that day by the Government (p. 36675). Neither previously had there been, nor was there at that time, any specific definition of what grounds were regarded as the basis of the running objection.

On June 21 a discussion arose as to what grounds came within (that is, were implied by interposing) the running objection (p. 36862). During the colloquy that ensued Alcoa's counsel said, in effect, that he would not understand that violation

of the best evidence rule was claimed to be a ground for the running objection (pp. 36867–70),—unless, as is plainly implied, definitely assigned by the Government at the time. The matter was left open until the day the court next sat (June 26). Before then, on several occasions the Government had specifically assigned hearsay as a ground of objection (for example, pp. 36865, 36877, 36880). On June 26 an understanding was reached (pp. 36884–7). This understanding was specifically construed by the court, as was stated at the time, to mean that the only ground of objection which, without being mentioned, would be carried in the running objection was that the objected-to evidence was hearsay (p. 36886). The Government acquiesced in that interpretation of the arrangement (p. 36887).

Subsequently, so far as I can discover, nothing occurred which in the slightest altered the arrangement as expressed on June 26 and embodied in the minutes of that day. On the contrary, sundry later statements by counsel (pp. 37414, 37428–30, 37824, 37828, 37863, 37898, 38234), as well as statements by the court (pp. 36894, 37430, 37432–3, 37836), indicate, and I think are not open to any other construction than, that they understood and acted on the assumption that, without specific further assignment, hearsay was the only basis of objection.

If I be right in my reading of the record, it would be unjust to Alcoa to permit a ground of objection to prevail which was not unambiguously interposed until after the taking of testimony was completed. If it were otherwise, then,—as Alcoa's counsel anticipated when he sought clarification of what was comprehended in the running objection as a ground,—Alcoa would be deprived of opportunity to cure or attempt to cure the defect if any existed (p. 37114).

■ As I see it, the consequence is that failure to comply with the best evidence rule constitutes no reason for striking out any of the evidence objected to by the Government.

There are other reasons for reaching the same conclusion as to various parts of the evidence. Among these are the following:

(1) As will appear by examination of the record, some things the Government briefs call secondary are clearly primary evidence.

■ (2) Indisputably in some, and I believe in all, instances at the trial when the Government expressly called for better evidence with respect to definitely named items, on the ground that what had been tendered was not the best, the writings were made available or the production of them waived. If that be so, I think a complaint, made in a brief after the taking of testimony had been closed and the witnesses had dispersed, came too late. As I feel, in order to benefit by an objection of that kind, it must have been interposed while the witness whose testimony is under attack was on the stand or at least while he could be recalled preceding the closing of taking testimony. Manifestly, it would be unfair to sustain the Government without reasonable advance warning to Alcoa of the nature of the objection relied on or when to sustain it would deprive Alcoa of opportunity to remedy or attempt to remedy the alleged fault.

I shall take it as true that there is no instance, when the Government definitely called for better evidence of a named item now moved to be stricken out, wherein the better evidence was not produced or its production waived unless, under an arrangement similar to that heretofore prescribed, within ten days after this memorandum is filed the Government by brief furnishes me exact references to what it regards as to the contrary. In event such a brief be served, within ten days thereafter Alcoa will have leave to reply.

■ (3) As already pointed out, under my interpretation of Burton v. Driggs, 20 Wall. 125, 136, 22 L.Ed. 299, summaries of facts from extensive and complicated documents are admissible in evidence without production of the writings.

■ (4) In some instances items of the evidence under consideration relate to collateral matters only. On that account the best evidence rule does not apply to them. Keene v. Meade, 3 Pet. 1, 7, 8, 7 L. Ed. 581; R. Hoe & Co. v. Commissioner of Internal Revenue, 2 Cir., 30 F.2d 630, 633; 634. See also Scullin v. Harper, 7 Cir., 78 F. 460, 462, 463; Central Commercial Co. v. Jones-Dusenbury Co., 7 Cir., 251 F. 13, 16; Daniels v. Smith, 130 N.Y. 696, 698, 29 N. E. 1098; McFadden v. Kingsbury, 11 Wend., N.Y., 667, 668, 669; Bowen v. National Bank of Newport, 11 Hun 226, 18 N.Y.Sup.Ct. 226, 228.

I have reviewed the entire testimony of Mr. Litchfield and Mr. Branner. As pre-

viously stated, this takes up more than 1,900 pages of the minutes. I have tried to consider everything in the record affecting what is objected to. Manifestly, it would much delay the issuance of this memorandum if I undertook separately to gather together everything which bears on the admissibility of each individual item. Under the program adopted August 14 last, when the taking of testimony was closed, the original briefs on the merits are due December 2. It probably would require beyond that date for me to discuss all the motions item by item. Save with respect to two matters as to which leave has been granted to put in additional briefs, the briefs due December 2 cannot be completed until the present evidence controversy is decided. It is very desirable to avoid postponement of the filing of those briefs. Accordingly, I think I should make my rulings on all items without consuming the time required for making further explanations.

Moreover, from one standpoint particularly, extensive review of the evidence by items seems unnecessary. In the briefs already furnished me, attention has been adequately drawn to the precise pages of the minutes on which counsel rely and wanted me to examine. These briefs were exchanged. By careful reading of them, in connection with this memorandum, I think in every instance the grounds for my conclusions will be made manifest.

Save to the extent of the conditional reservations herein of opportunities for additional briefs, in conformity with the foregoing, disposition of the items in the motions will be as follows:

### Exhibit 1671 (Id.)

Motions as to items 4, 6, 11, 13, 17 (partly on consent), 18 (on consent), 19 (on consent) and 26 are granted (the portion of item 17 which Alcoa agrees be stricken out beginning with the words "and I was given some" and ending with the words "Barima River deposits"). All other motions are denied.

### Exhibit 1681 (Id.)

On consent of Alcoa, motions as to items 15, 16, 17, 20, 21, 22, 24, 25, 26 and 27 are granted. Motions as to items 1, 4, 12, 13, 14, 18, 19, 23 and 28 are also granted. All other motions are denied.

### Exhibit 1799 (Id.)

In one of the Government briefs the motions as to items 412 to 419 and 423 to 427 were withdrawn. Motions as to Exhibit 1693 and as to items 183, 185, 194–7, 216, 219, 220 (first sentence), 222–3, 227, 235–9, 242–4, 246, 252, 337 and 339 are granted. In all other respects the motions are denied.

### Exhibit 1798 (Id.)

The motion is denied.

In connection with the ruling just made, however, in order to avoid misapprehension, an explanatory statement should be made.

The evidence affirmatively shows that Mr. Branner pasted a piece of paper containing typewritten words and figures on the lower left hand portion of Exhibit 1696 for identification, which is a T. V. A. map. What was thus annexed is a mere computation by him. It was made up wholly from the face of the exhibit (pp. 38264–6, 38274–6, 38387–8). There was no proof whatever that its content is correct in fact. In consequence, the denial of the motion to strike out testimony about what the witness added (pp. 37918–29, 38389) is not to be taken as having the effect of bringing into evidence for their truth the figures and words placed on the map by way of summary; and, be it noted, the exhibit was excluded when offered (p. 38273).

What is retained in evidence by denial of the motion is kept in solely for the purpose of permitting consideration of it in determining the weight to be given to what Mr. Branner testified.

Out of abundance of caution, it may be well to remark that at this stage we are not interested in the weight of evidence. We are merely concerned with its admissibility. Only when the problem of weight is reached later, need we give attention to The Conqueror, 166 U.S. 110, 131, 17 S. Ct. 510, 41 L.Ed. 937, so frequently referred to at the trial. See, also, Norton v. Jensen, 9 Cir., 49 F. 859, 864; Green v. Terwilliger, C.C.Or., 56 F. 384, 394; Overweight C. Elevator Co. v. Improved Order R. M. H. Ass'n, 9 Cir., 94 F. 155, 160, 161.

For the assistance of the court, I shall be glad if the briefs on the merits will direct attention to evidence which counsel think bears on the weight which should be given to the testimony of each expert.

Finally, I wish to invite counsel in their briefs on the merits to discuss one aspect of the controversy which has not been argued and which, so far as I know, has not yet been brought, or at least squarely brought, to their attention. In order that

counsel may be able to furnish the kind of debate on the point that will help me, perhaps it will assist them if I make a tentative statement of the matter or its relevant features, with the understanding that such statement contains only a mere present impression. I deem it proper also to postpone, and I shall postpone, reaching definite conclusions on the subject until after the parties have been afforded opportunity by briefs to submit whatever, if anything, they care to have considered.

Manifestly, it is extremely difficult to determine the quantity of ore of a particular quality which, for the greater part, is hidden in the earth. At best only approximate estimates can be made.

As set out near the beginning of this memorandum, the Government charges that Alcoa owns or controls upwards of 90 per cent of the deposits of aluminum grade bauxite in the United States. The Government has the burden of proving this allegation. It has not done so. Disregarding the Uihlein testimony, it has not even attempted to do so or offered evidence in its support. On the other hand, Alcoa has undertaken to establish that the charge is untrue and has produced two experts who have testified in its behalf..

On the assumption that everything recited in the last preceding paragraph is true, I would like to have the briefs on the merits argue three questions:

(1) If all the testimony of Messrs. Litchfield and Branner objected to by the Government were stricken out, would there remain any evidence in support of its charge as to the relative quantities of bauxite held by Alcoa and held by others in this country?

(2) If the testimony of the Alcoa expert witnesses were wholly rejected, would the Government benefit?

(3) If the evidence of the experts in support of their opinions were conceded to be-incompetent in some but not in all of the respects complained of by the Government, would that be sufficient justification for wholly disregarding their estimates?

In short I might phrase my inquiry in this way: Are the rulings made by this memorandum in reality merely academic?

While I have framed three specific inquiries, the answers need not be restrained. Comments may extend to anything counsel may deem relevant.

If counsel desire an extension of time for putting in additional briefs on the points for which leave has been granted herein, they may agree on it, or, if they cannot agree, the court will fix a date, provided that in no event shall the briefs be delayed beyond January 10, 1941.