**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Gregory K. SYTCH, Anna Sytch, and Lincoln Gregory Trades School, Inc., a New Jersey Corporation, Defendants-Appellants.**

**No. 12482.**

United States Court of Appeals
Third Circuit.

Argued May 5, 1958.

Decided Aug. 6, 1958.

Charles A. Stanziale, Newark, N. J., Harry Weiner, Elizabeth, N. J., for appellants.

Charles H. Hoens, Jr., Asst. U. S. Atty., Newark, N. J. (Chester A. Weidenburner, U. S. Atty., Newark, N. J., on the brief), for plaintiff-appellee.

Before MARIS, GOODRICH and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The government obtained a judgment of $76,957.10 against appellants for overpayment to appellant Lincoln Gregory Trades School, Inc. which had resulted from the filing of a false and fraudulent statement of costs with the Veterans Administration.

Appellant Gregory Sytch was president and appellant Anna Sytch, his wife, vice-president of the appellant school where various methods of welding were taught. The school obtained a contract with the Veterans Administration, covering the period from February 23, 1948

to August 31, 1948, for the teaching of welding to veterans under the G.I. Bill. As that agreement expired another one was entered into, running from September 1, 1948 to August 31, 1949. On September 20, 1949, in accordance with the Veterans Administration requirement, defendants-appellants filed a sworn statement of the actual cost of operating the school during the second contract term. On the basis of those alleged costs the Administration entered into a third contract from September 1, 1949 to August 31, 1950. Because the figures in the statement had been substantially increased in excess of the true costs incurred by the school, the Administration overpaid the school. This suit was to recover double that overpayment plus statutory damages of $2,000 under the False Claims Act, 31 U.S.C.A. § 231 et seq. as amended.

Following the filing of this action the defendants-appellants were indicted for making the false and fraudulent statement to the Administration for the purpose of obtaining a contract from the latter. The defendants-appellants pleaded guilty to that indictment and were sentenced.

Those guilty pleas were admitted on opening by defendants' attorney at the trial of the case now before us. The government moved for summary judgment as to liability which the court allowed. The cause proceeded on the question of the amount of damages sustained by the Administration. The jury awarded $48,000 on the claim. Doubled by the court the sum came to $96,000. This plus the $2,000 statutory damages made a total verdict to the government of $98,000. The jury also found that the defendants were entitled to $21,042.90 on their counterclaim. The court deducted that amount from the plaintiff's verdict, leaving $76,957.10, for which judgment was entered in favor of the government.

Appellants urge that the district judge erred in permitting the testimony of Federal Bureau of Investigation Agent Shahan as it related to his calculations.

■ The government is on sound ground when it suggests, as it should, that this question is not before us since there was no objection from the defense attorneys to the testimony nor any motion to strike it. Our search of the record verifies the absence of effort to prevent the evidence now complained of from going into the record or of any later effort to eliminate it. Unless the testimony prejudicially affected the substantial rights of the appellants, "The assignment will not be considered as constituting reversible error since it lacks the foundation of an objection in the court below." Hickey v. United States, 3 Cir., 1954, 208 F.2d 269, 279, certiorari denied 1954, 347 U.S. 919, 74 S.Ct. 519, 98 L.Ed. 1074.

■ We do not find that the allowance of the agent's calculations in evidence was plain error. As to the first of these he was not testifying factually or giving an opinion. The particular figure was arrived at by taking the total of the ten checks payable to three named concerns by the school and expressly assuming[1] that it represented materials never purchased for the school. The court charged the jury: "I charge you, ladies and gentlemen, that this computation by Agent Shahan is based upon the presumption that the merchandise was not furnished. * * * If you find from the evidence that the merchandise was furnished—you had not—then, of course, you cannot accept the figures as given by Agent Shahan."

■■ The second point in connection with the Shahan evidence has to do with invoices turned over to him by Gregory Sytch. The facts were clearly developed on cross-examination and the credibility of the testimony was for the jury. The reception of the evidence without objection does not call for action by us of our own motion.

■ Complaint is made of the trial court's ruling which excluded the testi-

---

1. There was testimony which supported that assumption.

mony of William D. Dawson. This witness qualified as an expert in the operation of welding schools. He was asked:

"Q. By reason of your experience in the trade school movement and your experience in maintaining trade schools and in welding, can you say that the proportion of 71 cents per hour for teaching students in a course of acetyline welding is a fair estimate of the cost of materials supplied to the school?"

This was objected to. The defense attorney stated:

"I have other questions to ask along this line. The purpose of my questions are for the purpose of proving by this expert that if these courses were given in accordance with the cost statement it would be necessary to supply the amount of materials as set forth in the cost statement. Will your Honor overrule that line of questioning?"

The objection was sustained. We think the ruling was within the discretion of the trial court. The issue was not whether the portion of costs allotted by the school for teaching students was reasonable. The admitted charge was that the actual cost account submitted by the school was false and fraudulent. The only issue for the jury was whether the government had been overcharged and if so how much. Even if the school's true cost had been higher than Mr. Dawson's estimate of what would have been reasonable and had been so stated, assuming such cost had been honestly arrived at, there would have been neither false nor fraudulent representation with reference to it.

Objection is made to the court's jury instructions regarding the plaintiff's damages and as to how the award on the counterclaim (the government conceded that $17,859.88 was due defendants under the 1951 contract) should be applied against any amount allowed plaintiff.

The court carefully told the jury as to the main claim:

"I will do the doubling and you folks will find out what the damages are if any. All I have to do is multiply by two, so do not be confused. If you find any damages here and you find the amount thereof, give us that amount but do not try to double it." As to the counterclaim the judge stated that the government conceded it owed the defendants $17,859.88 for 1951 instruction. He asked the jury to specifically answer his interrogatory "Question 3: Are the defendants entitled to recover more than $17,000 (approximate figure) on their counterclaim? * * * If the answer to question 3 is Yes, in what amount are the defendants entitled to recover on their counterclaim."

Appellants assert that what the judge should have done was have the jury subtract the amount of the counterclaim from the verdict awarded the plaintiff. It is the resultant figure that appellants consider should have been doubled by the court and not the full original verdict.

The statute provides that "Any person * * * who shall make or cause to be made, or present or cause to be presented, for payment or approval, * * * any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent, * * * shall forfeit and pay to the United States the sum of $2,000, and, in addition, *double the amount of damages which the United States may have sustained by reason of the doing or committing such act,* * * *." (Emphasis supplied.)

The cause of action here was alleged damage incurred by the United States arising out of the filing by the defendants of the false statement of costs for the September 1, 1948 to August 31, 1949 period. This had directly caused overpayments under the contract covering September 1, 1949 to August 31, 1950 since the school's costs for that period were fixed by the previous term's costs as appearing in the statement. The government proofs were confined to that situation. The jury was asked by the

court to answer the following questions as they were explained by the court:

"Now, what is the first question? 'Did the plaintiff, United States of America, sustain damage in consequence of the false cost statements rendered by the defendants'—it says defendant, I won't change it, but when I say defendant it means all three because all three stand on the same basis in this case. Let me read it over again. 'Did the plaintiff, United States of America, sustain damage in consequence of the false cost statements rendered by the defendant to the Veterans Administration?'

"'Answer: Yes— No—.' If you answer that you put a check after Yes, and if you answer it No, you put a check after No.

"The second question: 'If the answer to the foregoing question is "Yes" what was the amount of such damage?'

"'Answer: $————.' You will fill it in. Of course, as I have said before, if you answer the first question No, you do not have to answer the second."

■ The statutory act was the filing of the statement. The jury found that the damages the United States "sustained by reason of the doing or committing of such act * * *" amounted to $48,-000. That is the sum the statute directs be doubled. The counterclaim was, as stated in the document itself and reiterated in a defense request to charge "for services rendered in connection with the teaching of veterans the sum of $26,-173.52, *for the period between February 1, 1951 and May 15, 1951.*" (Emphasis supplied.) The plaintiff's damages and the counterclaim were unrelated; different years, different contracts. Defendants' counterclaim involving the year 1951 was not directed either to the merits or the amount of the government's cause of action arising out of the application of the spurious costs statement of the 1948–1949 operation to the 1949–1950 agreement. The counterclaim was not affected by what happened to the government's suit. The jury could have decided against the government as to damages and in favor of the defendants in excess of the agreed liability on the counterclaim. As we read the statute it unmistakably orders the damage sustained by the United States from the filing by the defendants of their false statement, to be doubled. That damage was assessed by the jury at $48,000. It was properly doubled by the trial court.

■ Appellants also contend that the verdict was contrary to the weight of the evidence and that the latter was insufficient to support the verdict. Those matters were argued to the district judge on a motion to set the verdict aside and for a new trial. The court found "that the verdict of the jury was amply justified by the evidence * * *" Our own study of the record reveals no error in that conclusion.

The judgment of the district court will be affirmed.