James A. HERON, Appellant,

v.

William J. HERON.

No. 17045.

United States Court of Appeals
Third Circuit.

Argued March 21, 1968.

Decided April 30, 1968.

Fred Lowenschuss, Snyder & Lowenschuss, Philadelphia, Pa., for appellant.

Richard J. Van Roden, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellee.

Before McLAUGHLIN, FORMAN and FREEDMAN, Circuit Judges.

OPINION OF THE COURT

GERALD McLAUGHLIN, Circuit Judge.

This personal injury diversity negligence action was tried to a jury which decided that plaintiff had been guilty of contributory negligence. From the resultant judgment in favor of defendant, plaintiff appeals.

The suit was originally by James A. Heron against his brother William J. Heron and the latter's then wife, Lillian. Appellant is a carpenter. He is a resident of Pennsylvania and was such during all times critical to this cause. Defendant William J. Heron, during the

period of the claim herein, was a resident of California. Lillian Heron was not served with process and was dismissed without prejudice from the litigation.

Prior to the accident William Heron and his wife were living in Santa Ana, Southern California. He had a sixty foot yacht which was being repaired. He suggested to his brother James in Philadelphia that the latter come to Santa Ana and work on the yacht. James Heron testified that he spent his first California night at his brother's home. According to the deposition of the only other fact witness, Lillian Gramer (formerly Heron), James stayed at the William Heron house for the period prior to the accident except for one or two nights on the boat. He had a bedroom of his own and "used the guest bathroom down the hall." James apparently arrived in Santa Ana May 26, 1963. On May 30th, Memorial Day, William Heron brought his yacht captain home to dinner. James Heron was with them. Mrs. Gramer said they had two or three drinks after they arrived at the house "and by this time they were feeling pretty good." She stated, regarding Jim, "Where he ate it was so sloppy, he was so drunk he couldn't hardly eat." Later Mrs. Gramer took care of clearing the table. When she returned from the kitchen Jim had left. She asked the captain where he was and the captain replied "I think he went to bed." More than an hour later when she was going to retire she noticed that the bathroom light was still on. She knocked on the door saying "Jim, are you in the bathroom and are you all right?" According to her, Jim replied "Yes, I am all right. I will go to bed pretty soon." The next morning about eleven o'clock Jim came to the hallway at the dining room and said, "Lil, I hurt my eye last night." After that he "finally came out in his bathrobe and he says, 'Well, I don't know how I hurt my eye.'" Mrs. Gramer looked at the eye, it seemed in very bad condition. She called her husband down at the boat to come up to the house.

She said that she asked Jim "How could you have done it and where did it happen?" He said "It happened in the hallway last night when I was on my way from the bedroom to the bathroom." Mrs. Gramer examined the hall and the bathroom and found no blood or other indication of what had happened to him. She said Jim told her that it was when he first left the dining room table and was walking "from my bedroom to the bathroom last night something hit me so hard and with so much force it almost, it knocked me almost to my knees." He also suggested to Mrs. Gramer "It could have been somebody coming in, especially if the door was left unlocked." Mrs. Gramer answered "I don't know."

Plaintiff-appellant, testifying at the trial, said that on the particular evening he, his brother and the captain went straight from the boat to the brother's house, stopping only for Bill to obtain "a six-pack of beer." His testimony was that he had a can of beer at his brother's and that they had dinner. After the latter, two other guests who had been present left and he, his brother and the captain said goodnight and went to bed. About one thirty in the morning he started for the bathroom, it was dark and he had to feel along the wall. At the bathroom he looked for the light switch inside the bathroom and could not find it (there was actually a light switch outside the bathroom and one inside) and he hit his eye on the towel hook that was on the back of the door. Late that morning he was taken to the hospital. He was at the latter a week and spent two weeks more at his brother's and after that went back to light work on the boat for two weeks. He returned to Pennsylvania where he saw two doctors and was examined by another on behalf of appellee. He states he cannot see out of his right eye.

On cross-examination appellant admitted that he had been in the particular bathroom at least twice prior to his accident, that he "knew the light switches were on the side of the wall there", and there were two light switches, one inside

the bathroom and the other outside. He stated he had had a second can of beer at dinner but could not finish it. The second day of the trial he was recalled to the stand for more direct examination. At that time he asserted that his brother said to him "I meant to remove that damn hook * * * I bumped my head on that hook myself." Queried on cross-examination as to why he didn't testify like that the first time he was on the stand he answered "No special reason."

There are three grounds of appeal urged, two of these concern the charge of the Court. As above stated there were only two fact witnesses, the plaintiff and Mrs. Gramer who had been the wife of William Heron, plaintiff's brother, at the time of plaintiff's accident. We have seen that their testimony gave directly contradictory versions of the occurrence. Mrs. Gramer's deposition had been taken on March 22, 1967. James Heron was a trial witness. He testified May 16 and 17, 1967. In his charge, the Judge meticulously outlined the jury's role as triers of the facts. He said inter alia:

"Now, what counsel have said to you in their arguments, or what I say, is not evidence. It is for you peculiarly to remember what the witnesses have said here, both the witness from the stand and deposition testimony. That is your function.

"And if anything I say in this charge is inconsistent with your memory of the evidence, you must follow your memory and disregard what I say. In order to make certain points clear to you, I have to summarize as I recollect what the evidence was, but you may recollect it quite differently, and if your recollection is different from mine, it is for you to follow your recollection, and not mine; in the same way that you follow your recollection and not counsel's because you are the ones who are to decide the facts. And part of deciding the facts is remembering what the evidence has been.

"As I say, you as the jury are the sole and exclusive judges of the facts. It is also your function to determine the weight of the evidence, the accuracy of the witnesses, and the believability of the witnesses. Sometimes we call that 'credibility' of the witnesses. That is the same as 'believability' of the witnesses.

"You as jurors are the sole judges of the credibility of the witnesses and the weight their testimony deserves. The fact that the witness is speaking under oath—both this witness was speaking under oath that you heard here, and also his wife—there were two witnesses here; the plaintiff's wife—and the fact that Mrs. Heron, his former sister-in-law, was speaking under oath must be considered by you. But this fact may be outweighed by the manner in which the witness testified, by the character of the testimony given, or by contradictory evidence."

Regarding Mrs. Gramer he stated that she "has not been married to his (plaintiff's) brother for three years, and as far as I can recollect, she would have no interest in the litigaton. * * * She is married to somebody else now. She only was married to his brother for two or three years, according to the testimony, although she was married to other men, one for eighteen years, I think, and another for ten years. So that you must consider that." The Court also said that Mrs. Gramer had testified first by deposition in March 1967 and that her testimony had been written down. "So the plaintiff, when he came here this week to testify had had the opportunity to know just what she said. She did not have the opportunity to know what he was going to say. So you have the right to take that into consideration in evaluating their testimony."

After the conclusion of the charge, plaintff's attorney told the Court that the defendant had taken a deposition of plaintiff prior to the trial and that Mrs. Gramer and her attorney had a copy of that deposition at the time Mrs. Gramer

gave her testimony. Such deposition was not in evidence at the trial. The judge noted that the deposition was not in the Court file. It developed, as explained by defendant's lawyer, that the examination of plaintiff had been a discovery proceeding. The lawyer said regarding the deposition "it does not indicate what he (plaintiff) was going to testify at trial, because only I examined him. He was not examined for the purpose of trial by the plaintiff's attorney. It was discovery." The Court, speaking to counsel as to what plaintiff had said in his deposition, inquired "Well, did he mention, for example, this matter about his brother saying that he hit his head on the hook?" The defense attorney said, "No, sir." The plaintiff's attorney stated "He wasn't asked that question, your Honor."

On behalf of plaintiff there was also objection to the characterization of Mrs. Gramer as a disinterested witness. The theory on·this was that Mrs. Gramer in some fashion was jointly responsible. Defense counsel stated "Just because we only sued one—if we get a verdict against William Heron, he could very well turn around and sue her for contribution." Counsel for plaintiff insisted that the Court recharge the jury on both points above noted. The court did so, saying:

"Now, there is another matter that counsel tell me about that I had no way of knowing, and apparently Mr. Heron's deposition was taken in part —that is, the plaintiff's deposition— back in 1964, and counsel tell me it was not a full deposition and he did not testify in here to some of the things that he testified on the stand. But for what it is worth, his testimony on the subject was taken, at least in part, prior to the time that Mrs. Gramer testified, and she presumably had this testimony, which accords in part, apparently, with what he said here, before she testified in April, 1967. So you should take that into consideration. We don't know to what extent what he said in 1964 was or was not consistent with what he said here.

"Now, about the possible interest of the witnesses in the outcome of the litigation which I talked to you about. Plaintiff's counsel has asked me to tell you that it is possible that if the defendant was held responsible here, that he could sue his wife on the ground that she was also negligent and responsible, and, hence, would have to contribute to any verdict which you rendered in plaintiff's part, because she was there the night of the accident, and according to plaintiff's counsel, she might be found to have been negligent in failing to put on more lights, and so on, you see, as well as he. So you must take that possibility into consideration, depending on how you find the facts.

"It is true, two people can be negligent, and if the factfinder finds that both of their negligence was a substantial factor in causing the accident, then they both can be liable for an accident. It isn't true that only one person may be liable for an accident when the suit is based on negligence, as it is here."

■ Plaintiff's attorney objected to that part of the recharge which said " * * * apparently Mr. Heron's deposition was taken in part—that is, the plaintiff's deposition—back in 1964, and counsel tell me it was not a full deposition and he did not testify in here (in the deposition) to some of the things that he testified on the stand."

Immediately after the above objection the Judge said to plaintiff's attorney "You conceded that the deposition didn't cover all his testimony as it was given here." The attorney said "Well, certainly, because I asked him no questions." The Court said "I am certainly not going to tell the jury something that is inaccurate, and not to have pointed out to them that the deposition did not

cover everything he said here, would have been inaccurate."

With the two charge items in full focus it is evident that the trial Judge did conscientiously instruct the jury that Mrs. Gramer prior to her own testimony had had the opportunity to read whatever plaintiff had stated in his discovery examination by the defense. The Court in addition told the jury that on the theory of plaintiff's counsel, if defendant was held responsible in that suit he could sue his wife for contribution. Because of that situation the Court said to the jury "So you must take that possibility into consideration, depending on how you find the facts." There is no trial objection to the recharge on this second item.

From all of the above we question whether there was any error whatsoever by the Judge with respect to the two portions of the charge regarding which appellant complains. If any, it was de minimis. As Judge Biggs stated for this Court in Cromling v. Pittsburgh & Lake Erie R. R. Co., 327 F.2d 142, 151–152 (1963), rehearing denied 1964:

"It is axiomatic that the function of a trial judge in a federal court is much more than that of a mere arbitrator to rule upon objections and to instuct the jury. 'It is his function to conduct the trial in an orderly way with a view to eliciting the truth and to attaining justice between the parties.' Knapp v. Kinsey, 232 F.2d 458, 466 (6 Cir.), cert. denied, 352 U.S. 892, 77 S.Ct. 131, 1 L.Ed.2d 86 (1956). To this end it has been stated that '[i]t is his duty to see that the issues are not obscured and that the testimony is not misunderstood.'"

To the same effect Faudree v. Iron City Sand and Gravel Company, 315 F. 2d 647, 651 (3 Cir. 1963).

In the light of our decision on the charge questions, there is no need or excuse for passing upon the third point presented by appellant.

The judgment of the District Court will be affirmed.