**BELMONT INDUSTRIES, INC.**

v.

**BETHLEHEM STEEL CORPORATION.**

**Civ. A. No. 70–3488.**

United States District Court,
E. D. Pennsylvania.

April 2, 1974.

H. Laddie Montague, Jr., David Berger, Philadelphia, Pa., for plaintiff.

John G. Harkins, Jr., Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

BRODERICK, District Judge.

This matter is before the Court on the plaintiff's Motion for a New Trial. Plaintiff, Belmont Industries, Inc. (Belmont), filed this private antitrust action on December 18, 1970 against the Bethlehem Steel Corporation (Bethlehem). Belmont asserted a cause of action under 15 United States Code, Sections 15 and 26 (the Clayton Act); [1] and alleged, *inter alia*,[2] that Bethlehem had violated the antitrust laws of the United States, specifically 15 United States Code, Section 2 (the Sherman Act).[3] Belmont alleged that from at least as early as 1966 and continuing up to and including the date of filing of the complaint Bethlehem had monopolized or attempted to monopolize the market for fabricating

1. Section 15 provides in pertinent part as follows:

 Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States . . . .

 Section 26 provides in pertinent part as follows:

 Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties . . . .

2. Count II of Belmont's complaint alleged violations of the Robinson-Patman Act. Pursuant to a stipulation of counsel and by Order dated September 20, 1973, the Court granted summary judgment for Bethlehem on Count II.

3. Section 2 provides in pertinent part:

 Every person who shall monopolize, or attempt to monopolize, . . . any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor . . . .

and erecting structural steel within a specific geographic area.[4]

Belmont alleged and Bethlehem admitted that it was a vertically integrated corporate giant competing at all levels of the steel industry. Specifically, Belmont alleged that Bethlehem possessed a natural and lawful monopoly in the market for structural steel plates and shapes. It was alleged that this natural monopoly resulted from a freight rate advantage. Bethlehem admitted the existence of a freight rate advantage but did not admit that it had a monopoly. The relevant geographic market was stipulated as was the relevant product market. The geographic market was the states of Delaware, New York, Connecticut, New Jersey, Maryland and Eastern Pennsylvania to some line east of Altoona and west of Harrisburg (N.T. 1558, 1559). The product market was the market for the fabrication and erection of structural steel. (Pretrial Order, p. 23, ¶1). It was also stipulated that structural steel plates and shapes are the products which must be processed by a fabricator to the specifications of a building contractor prior to the erection of the steel at the building site (Pretrial Order, p. 23 ¶2). Belmont purchased substantially all of its requirements for structural steel plates and shapes from Bethlehem. The market for fabrication and erection of structural steel (fabrication level) is the next level in the vertical distribution chain from the manufacture of structural steel plates and shapes (manufacturing level). It was also stipulated that there was an independent competitive product market for fabrication and erection in which both Belmont and Bethlehem competed (Pretrial Order, p. 26, ¶12). Belmont alleged that by abuse of its natural monopoly in the manufacturing level of the vertical distribution chain Bethlehem monopolized or attempted to monopolize the market at the fabrication level. Belmont alleged that Bethlehem was operating its fabrication department at a loss or at a marginal profit while at the same time reaping substantial profits at the manufacturing level in the vertical chain. Belmont alleged that Bethlehem's FSC (fabrication and erection) department was bidding jobs at below cost or at an unreasonably low profit margin. It was not alleged and, indeed, the proof at trial did not show that Bethlehem controlled any substantial percentage of the fabricating market. Bethlehem was the successful bidder in only a small percentage of the jobs on which Belmont also bid. It was Belmont's theory of liability that Bethlehem's natural monopoly in the manufacture of structural steel plates and shapes enabled it to operate its FSC Department at a loss or at a low profit margin so that it could and did bid jobs at below cost or at an unreasonably low profit, all of which constituted a violation of the Sherman Act. Belmont also claimed that such alleged operations on the part of Bethlehem also demonstrated that Bethlehem intended to achieve the power to control prices or exclude competitors in the market for fabricating and erecting structural steel and that there was a reasonable likelihood that Bethlehem would sooner or later achieve that power.

A jury was selected, and trial commenced on September 25, 1973. On October 12, 1973 the jury, by answering the following interrogatories submitted to it by the Court, returned a verdict in favor of the defendant, Bethlehem:[5]

### Interrogatories to the Jury

You must answer the following question:

1. Do you find from a preponderance of the evidence that during the

---

4. The relevant geographic market alleged in the complaint was the Middle-Atlantic states along the Eastern seaboard, specifically Pennsylvania, Delaware, New Jersey, New York, Connecticut and Maryland.

5. The interrogatories as finally submitted to the jury were agreed to by the parties. (N.T. 1581).

period January 1, 1966 through December 18, 1970 the defendant had the power to control prices or exclude competitors from the market for fabricating and erecting structural steel within the relevant geographic market?

Yes X No___

ANSWER THE FOLLOWING QUESTION ONLY IF YOU HAVE ANSWERED NO. 1 "YES":

2. Do you find from a preponderance of the evidence that during the period January 1, 1966 through December 18, 1970 the defendant had the intent to exercise its power either to control prices or to exclude competitors from the market for fabricating and erecting structural steel within the relevant geographic market?

Yes___ No X

YOU MUST ANSWER THE FOLLOWING QUESTION:

3. Do you find from a preponderance of the evidence that during the period January 1, 1966 through December 18, 1970 the defendant intended to achieve the power to control prices or exclude competitors from the market for fabricating and erecting structural steel within the relevant geographic market?

Yes___ No X

ANSWER THE FOLLOWING QUESTION ONLY IF YOU HAVE ANSWERED NO. 3 "YES":

4. Do you find from a preponderance of the evidence that the defendant performed some act or acts during the period January 1, 1966 through December 18, 1970 in furtherance of the intent which you found in Interrogatory Number 3 and that there was a reasonable likelihood that the defendant would sooner or later achieve the power to control prices or exclude competitors from the market for fabricating and erecting structural

steel within the relevant geographic market?

Yes___ No___

Judgment was entered by the Clerk on the jury's verdict on October 16, 1973.

Belmont filed a Motion for a New Trial on October 26, 1973 and in its motion and brief advanced two reasons why a new trial should be granted. First, Belmont alleges that it was prejudicial error for the Court to deny Belmont's motion to strike from the record certain testimony elicited by counsel for Bethlehem upon cross-examination. Second, Belmont alleges that it was prejudicial error for the Court to reject Belmont's offer of certain evidence relating to an alleged termination by Bethlehem on January 8, 1970 of credit terms previously available to Belmont.

## I. THE DENIAL OF THE MOTION TO STRIKE

Belmont contends that it was prejudicial error for the Court to deny its motion to strike from the record certain testimony elicited by Bethlehem's counsel on cross-examination. Belmont contends that the testimony in question was inadmissible hearsay in that it was based upon documents which were not introduced into evidence at the trial of this case. In addition, they contend that the testimony was inadmissible under the best evidence rule.

All testimony was concluded on October 11, 1973 after two weeks of trial. Following the close of Belmont's case, Bethlehem closed without presenting any evidence; and Bethlehem's motion for a directed verdict was argued to the Court and denied by the Court. On the morning of October 12, 1973, the Court ruled on the points for charge. Counsel gave their closing speeches. The Court charged the jury, and the jury retired to deliberate. While the Court was making its rulings on the points for charge, Belmont's counsel made a motion to strike certain unspecified testimony elicited by Bethlehem's counsel on cross-examina-

tion. It will be helpful at this point to quote from the notes of testimony concerning this motion:

MR. MONTAGUE: Your Honor, may I interrupt?

THE COURT: Yes.

MR. MONTAGUE: May I interrupt a minute because this Charge brings something to mind. ·

THE COURT: Which one?

MR. MONTAGUE: This is Plaintiff's No. 5.

THE COURT: Five?

MR. MONTAGUE: This has occurred as of yesterday evening, and that is the fact that the defendant had identified documents and there was certain testimony taken on those documents and now those documents are not introduced as evidence and the testimony on those documents wasn't necessarily the witnesses' own present knowledge. It could have refreshed recollection or recall after looking at those documents; and I think that with respect to the cross-examination, Number one, the testimony should be stricken from the record, and I do have a case on that. I would like Your Honor to consider it. I ask that it be done.

I don't know how to do it mechanically.

THE COURT: You tell me what the case is. That surprises me. Let me see it.

MR. MONTAGUE: Okay. I do have a copy here.

THE COURT: But I get surprised every day.

MR. MONTAGUE: I will let Mr. Harkins see my copy.

The name of the case is United States versus Keppler and it is 1FD, 215, (1 F2d 315) and it is in the Third Circuit.

I think the headnote No. 1, Your Honor—

THE COURT: Tell me again, whose testimony are you moving to strike? I take it that is what you are doing.

MR. MONTAGUE: Yes. I am moving to strike the cross-examination testimony of the witnesses that relied upon these documents, where they were refreshed by these documents or where it would have been hearsay but for these documents. I don't think that testimony is proper.

THE COURT: Well, on what basis don't you think it is proper?

MR. MONTAGUE: Well, it is hearsay, Number One. Number Two, it is based—

THE COURT: Let me just say as to hearsay that it is a fundamental principal of hearsay that any objection that is not taken to hearsay at the time is inadmissible.

Hearsay, as you generally know, is admissible unless somebody objects to it.

MR. MONTAGUE: I agree with Your Honor but at that time the document was identified and I think it would have been presumptuous of me at that time to object on the basis that the document may not be introduced. Maybe I should have, but honestly that did never enter my mind.

THE COURT: I am going to give you an exception.

MR. MONTAGUE: Okay. Fine.

THE COURT: Naturally, at this time, I reject the motion to strike. (N.T. 1547–1548)

■ Belmont's argument concerning the hearsay nature of the cross-examination testimony and its allegation that the "best evidence" rule was violated in the course of the cross-examination is answered by a well recognized rule of evidence; such evidence to which a timely objection is not made becomes competent. *McCormick* at page 126 states this rule as follows:

A failure to make sufficient objection to evidence which is incompetent waives as we have seen any ground of complaint of the admission of the evi-

dence. But it has another effect, equally important. If the evidence is received without objection, it becomes part of the evidence in the case, and is useable as proof to the extent of whatever rational persuasive power it may have. The fact that it was inadmissible does not prevent its use as proof so far as it has probative value. Such incompetent evidence unobjected to, may be relied on in argument, and alone or in part may support a verdict or finding. This principle is almost universally accepted, and it applies to any ground of incompetency under the exclusionary rules. It is most often invoked in respect to hearsay, but it has been applied to evidence vulnerable as secondary evidence of writings . . . .[6]

See also Stafford v. Roadway Transit Co., 73 F.Supp. 458, 463 (W.D.Pa.1947); United States v. Aluminum Co. of America, 35 F.Supp. 820, 826 (S.D.N.Y. 1940); Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 252, 56 L.Ed. 500 (1912); Boston & A. R. Co. v. O'Reilly, 158 U.S. 334, 15 S.Ct. 830, 831, 39 L.Ed. 1006 (1895); Toplitz v. Hedden, 146 U. S. 252, 13 S.Ct. 70, 71, 36 L.Ed. 961 (1892).

■ In this case there is no contention that the cross-examination testimony lacked probative value, nor is it contended that Belmont objected to the testimony at the time it was being elicited by counsel for Bethlehem. It is, therefore, clear that there was no basis on which the Court should have granted the motion to strike the cross-examination testimony. The notes of testimony quoted above show that the Court denied the motion on the ground that any hearsay not objected to at the time that it is being elicited becomes competent evidence.

## TIMELINESS OF THE MOTION

A review of the notes of testimony reveals that at no time prior to the motion to strike did counsel for Belmont object on any basis to the testimony elicited by Bethlehem's counsel on cross-examination. Belmont's motion to strike was made during the course of the Court making its rulings on points for charge, after Belmont had closed its case and after Bethlehem had determined to go to the jury without presenting evidence. (N.T. 1546–1549). The motion when made was based on the ground that certain unspecified cross-examination testimony had been elicited on the basis of documents that had been marked by Bethlehem for identification, had been listed in the pretrial order but were not introduced into evidence by Bethlehem and, therefore, the cross-examination based on these documents should be stricken as hearsay. The failure of the Court to grant its motions to strike is urged by Belmont as an argument for a new trial. Belmont argues in its brief that it did not object at the time the testimony was being elicited because counsel considered that it would be more appropriate to object when Bethlehem offered the documents into evidence. Counsel for Belmont has at least been consistent in that he argued at the time that the motion to strike was made that: "it would have been presumptuous" to object at the time the questions were being asked. (N.T. 1548).

■■ This Court does not agree that it would have been presumptuous or inappropriate to object at the time that the questions were asked. The rules of evidence and the orderly administration of justice require that objections be made as soon as the ground therefor becomes apparent. *McCormick, supra*, at page 115 states the rule as follows:

> If the administration of the exclusionary rule is to be fair and workable the judge must be promptly informed by a party, who contends that evidence should be rejected, of his contention and the grounds therefor. The initiative is placed on the party not on the

---

6. Charles T. McCormick, Handbook of the Law of Evidence (1954).

judge. The approach, accordingly, is that a failure to object to an offer of evidence at the time the offer is made, assigning the grounds, is a waiver of any grounds of complaint against its admission.

The cardinal point is that counsel are not allowed to gamble upon the possibility of a favorable answer, but the objection must be made as soon as the ground becomes apparent. Usually this will be as soon as the question is asked, assuming that the question shows that it calls for inadmissible evidence.

See also Hornin v. Montgomery Ward & Co., 120 F.2d 500, 504 (3d Cir. 1941); United States v. Sytch, 257 F.2d 475, 477 (3d Cir. 1958); United States v. Aluminum Co. of America, *supra*, 35 F. Supp. at 827. Generally speaking, a motion to strike is simply a belated objection. *McCormick, supra,* at 116. Ordinarily a motion to strike is properly denied where no objection has been made to the evidence at the time it is offered or no objection has been made to a question when asked or to the answer when given. Limbeck v. Interstate Power Co., 69 F.2d 249, 251 (8th Cir. 1934); MacCurdy v. United States, 246 F.2d 67, 68 (5th Cir. 1957), cert. den., 355 U.S. 933, 78 S.Ct. 415, 2 L.Ed.2d 416 (1958), 88 C.J.S. Trial § 136 (1955). In any event a motion to strike must be made as soon as the ground therefor becomes apparent. Had timely objection been made, the Court could have ruled; and the problems of reviewing testimony and directing the jury to ignore days of cross-examination would not have been presented.

■ Belmont argues that Bethlehem's tactical decision to call no witnesses and offer no evidence deprived it of an opportunity to object to the documents. The contention that there was no opportunity to object to the testimony in question because Bethlehem never moved the documents into evidence cannot be sustained. Belmont argues that it made objection in the pretrial order to certain of the documents used by Bethlehem. Appendix "B" to the Final Pretrial Order relates exclusively to exhibits and is in excess of 110 pages. The parties listed about 1300 exhibits for *possible* use at trial. The standing order of this Court in connection with pretrial requires that all exhibits be listed in the Final Pretrial Order and that all objections to exhibits and the reasons therefor be set forth; and if objections are not set forth, they are deemed waived. It is made clear to the parties however that the Court will not rule on objections to exhibits before trial and that the objection must be raised at the appropriate time during the course of the trial. It is the contention of Belmont that its objections set forth in the Pretrial Order to some of the exhibits which were used by Bethlehem in the course of its cross-examination of Belmont's witnesses constituted a timely objection to the use of such documents without bringing the objection to the Court's attention during trial. Such a contention is clearly without merit.

## SCOPE OF THE MOTION

■■ A brief quote from the notes of testimony is appropriate.

THE COURT: Tell me again, whose testimony are you moving to strike? I take it that is what you are doing.

MR. MONTAGUE: Yes. I am moving to strike the cross-examination testimony of the witnesses that relied upon these documents, where they were refreshed by these documents or where it would have been hearsay but for these documents. I don't think that testimony is proper. (N.T. 1548)

Although the motion to strike which was offered after the conclusion of all the testimony was not so broad as to include all the cross-examination testimony, it was nevertheless vague. The case had proceeded for two weeks; and although

the notes of testimony at that time exceeded 1500 pages, both parties had been receiving expedited daily copy, and Belmont was in a position to review the testimony and to make specific allegations as to which portions of the cross-examination it wanted stricken. Belmont was more specific in designating the testimony which it claims should have been stricken in this motion for a new trial. The notes of testimony reveal that the motion to strike appeared to be somewhat of an afterthought made during the course of the Court making its rulings on points for charge. (N.T. 1545–1549). The motion, when made, was, to say the least, not specific. Such a motion, like an objection, must be made with a degree of specificity that would enable a court to rule upon it. United States v. 3,544 Acres of Land, etc., 147 F.2d 596, 599 (3d Cir. 1945); Schramm v. Oakes, 352 F.2d 143 (10th Cir. 1965); Continental Oil Co. v. United States, 184 F.2d 802, 814 (9th Cir. 1950). Specificity is even more important in relation to a motion to strike; for if the motion is granted, the Court is required to instruct the jury what it is they must disregard in their deliberations. The motion made at trial did not specify which witnesses' testimony was involved much less which portions of the testimony Belmont wished to have stricken from the record and the jury's consideration. Even if Belmont's motion to strike the cross-examination testimony had merit, the Court would have been required to deny it because it was so vague.

## THE BEST EVIDENCE RULE

 Belmont also contends that the cross-examination testimony of its witnesses should have been stricken on the ground that the oral testimony elicited from them which was based on certain documents identified and shown to them was not the best evidence of the content of such documents. The notes of testimony show that the best evidence rule was never mentioned as a ground in support of Belmont's motion to strike. This ground appeared for the first time as an added reason in support of the motion for a new trial. Counsel must make known to the Court at the appropriate time during the trial all objections and the grounds therefor in order to give the trial judge an opportunity to make an informed decision and to allow the judge and opposing counsel to take whatever corrective action may be necessary. *E. g.* Schramm v. Oakes, *supra*; United States v. Walker, 146 U.S.App.D.C. 95, 449 F.2d 1171 (1971). In the absence of plain error, matters not called to the attention of the trial judge cannot subsequently be raised in the post-trial stages of the proceeding. In addition, where, as here, an objection or motion to strike is on specific grounds, it is deemed limited to the grounds raised and others not raised are deemed waived. *See* Magill v. Westinghouse, 464 F.2d 294 (3d Cir. 1972); Knight v. Loveman, Joseph & Loeb, Inc., 217 F.2d 717 (5th Cir. 1954); Norwood v. Great American Indemnity Co., 146 F.2d 797 (3d Cir. 1944).

## AVAILABILITY OF THE DOCUMENTS

Belmont contends that a new trial should be granted based on the Court's refusal to strike certain cross-examination testimony which testimony was based on documents which were not introduced into evidence by Bethlehem. Belmont claims that such testimony was hearsay and that it was not the best evidence. These documents were listed in the pretrial order and had been reviewed by Belmont's counsel prior to the trial. The documents in question were marked for identification and were used by counsel for Bethlehem in his cross-examination of Belmont's witnesses. The documents were available throughout the trial to both parties. Most of the documents are corporate records of Belmont and Bethlehem. Bethlehem contends that many if not all of the documents

would have been admissible under various exceptions to the hearsay rule. Belmont had the opportunity to move all the documents into evidence but made the decision not to do so. (N.T. 1505–1510).

## CONCLUSION

Accordingly, Belmont's Motion for a New Trial on the basis of the denial of the motion to strike must be denied.

## II. THE REJECTION OF THE OFFER OF PROOF RE CREDIT TERMINATION EVIDENCE

The issue of the admissibility of the evidence relating to the alleged termination of credit is now before the Court for the third time. On June 4, 1973 Bethlehem moved the Court, pursuant to Rule 16, F.R.Civ.P., to strike certain paragraphs of Belmont's Pre-Trial Memorandum (Order).[7] The paragraphs which Bethlehem desired to have stricken related solely to the credit evidence. The issue was briefed by counsel for both parties and argued to the Court on June 20, 1973, three months prior to the trial. Following the argument, Bethlehem's motion to strike was denied without prejudice to renewing it at the time of trial. (N.T. Hearing of June 20, 1973 at 23). The issue of the admissibility of the credit evidence was again raised on October 1, 1973 (the third day of trial). At that time the Court ruled that such evidence was not to be admitted. (N.T. 367, 368 and 408–429). Following review and consideration of the supplemental briefs filed by the parties, the Court reaffirmed its earlier ruling and the credit evidence was not admitted at the trial (N.T. 1502, 1503).

The evidence in question concerned a meeting on January 8, 1971 (three weeks after the complaint in this case was filed), between representatives of Belmont and Bethlehem and certain actions which took place shortly after that said meeting.[8] Belmont contended that the evidence shows that Bethlehem did in fact terminate the credit terms upon which the parties had traditionally dealt and that such termination was in direct response to the filing of the complaint in this case (N.T. 411). Belmont claims that such evidence should have been admitted to show that Bethlehem possessed monopoly power and that it had an intent to exercise its monopoly power. (N.T. 419). In the motion for a new trial, Belmont argues only the issue of relevancy as it relates to Bethlehem's alleged intent.[9] Bethlehem on the other hand claimed then, as it does now, that its evidence would prove that its credit arrangements with Belmont were never altered or terminated; and that furthermore its evidence would show that Belmont had been habitually late in paying its bills to Bethlehem (substantially beyond the 30-day terms) and that Bethlehem was concerned about the possibility that Belmont would withhold payment for steel delivered during the pendency of this lawsuit. At the argument, counsel for Bethlehem stated that the parties were litigating in the Court of Common Pleas an unpaid balance for delivered steel. Bethlehem also contended that any discussion of a possible change of credit terms was a reasonable business decision on the part of Bethlehem, entirely unrelated to the issues raised in this litigation. Bethlehem contends now, as it did then, that the evidence as to what happened at the January 8, 1971 meeting was not only irrelevant but would have been prejudicial and would have created a collateral issue which would consume substantial trial time.

---

7. Rule 16 of the Federal Rules of Civil Procedure relates to formulating of issues and pretrial procedure.

8. *See* exhibits "A" through "F" of Belmont's Memorandum in Opposition to Bethlehem's Motion to Strike (Paper No. 35).

9. The jury by their answer to Interrogatory No. 1 found that the defendant possessed monopoly power.

█ Assuming that the evidence offered may have been relevant, a trial court may, in the exercise of its sound discretion, exclude such evidence for a variety of reasons. Rule 403 of the proposed Federal Rules of Evidence provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.[10]

This proposed rule is not new law; it is substantially a restatement of the present law. *McCormick, supra,* at page 319, states:

> But relevance is not always enough. There may remain the question, is its value worth its costs? There are several counterbalancing factors . . . . First, the danger that the facts offered may unduly arouse the jury's emotions of prejudice, hostility or sympathy. Second, the probability that the proof and the answering evidence that it provokes may create a side issue that will unduly distract the jury from the main issues. Third, the likelihood that the evidence offered and the counter proof will consume an undue amount of time.

*See also* Shepard v. United States, 290 U.S. 96, 54 S.Ct. 22, 26, 78 L.Ed. 196 (1933); United Mine Workers of America v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 1593, 14 L.Ed.2d 626 (footnote 3) (1965); Cafasso v. Pennsylvania R. Co., 169 F.2d 451, 454 (3d Cir. 1948); United States v. 88 Cases, More or Less, Containing Bireley's Orange Beverage, 187 F.2d 967, 974 (3d Cir. 1951), cert. denied, 342 U.S. 861, 72 S.Ct. 88, 96 L. Ed. 648; Burch v. Reading Company, 140 F.Supp. 136, 147 (E.D.Pa.1956) aff'd, 3 Cir., 240 F.2d 574, cert. denied,

353 U.S. 965, 77 S.Ct. 1049, 1 L.Ed.2d 914 (1957); Herman Schwabe, Inc. v. United Shoe Machinery Corp., 297 F.2d 906, 912 (2d Cir. 1962); Kilarjian v. Horvath, 379 F.2d 547, 548 (2d Cir. 1967); International Shoe Machinery Corporation v. United Shoe Machinery Corporation, 315 F.2d 449, 459 (1st Cir. 1960).

In this case, each time the offer of proof was considered the Court determined that the possibility of undue prejudice and the possibility of misleading the jury by the introduction of a substantial collateral issue into the trial of a complicated case outweighed any possible relevance which the offered evidence may have had to the issue before the jury. This was a complicated antitrust case which the parties had originally estimated would consume six to ten weeks of trial time. The issues of liability and damages were bifurcated. Belmont completed its case on liability after two weeks of trial time. At that point, Bethlehem elected to go to the jury without putting in any evidence. The evidence in connection with the credit termination which allegedly took place three weeks after the complaint in this case was filed was offered for the purpose of proving that Bethlehem had monopoly power which it intended to exercise (N.T. 419). As such, it was circumstantial, possibly prejudicial, and it raised a substantial collateral issue. Belmont's complaint, filed on December 18, 1970, which it never amended, contained no claim for damages based on any activities of Bethlehem after that date. Furthermore, the complaint, as well as the proof at trial, was limited to the allegation that Bethlehem's natural monoply in the manufacture of structural steel plates and shapes enabled its FSC Department to operate at below cost or at a low profit margin so that it could and did bid jobs at below cost or at an unreasonably low profit margin in

10. Rules of Evidence Proposed by Subcommittee on Criminal Justice of the House Judiciary Committee, 42 U.S.L.W. No. 3, Supplement P. 5 [56 F.R.D. 218].

violation of the Sherman Act. Hence, even the relevance of the offered evidence was not as clear to the Court as it was to Belmont's counsel. The Court reviewed in detail the offer of proof including the memoranda and portions of the depositions upon which Belmont based its claim of credit termination, and concluded that Belmont's offer revealed drastically different interpretations of the events which followed and discussions which took place at the January 8, 1971 meeting. Additional evidence would have been required of Belmont to support its claim that its credit was terminated. It could be expected that Bethlehem would introduce evidence to rebut Belmont's claim of termination and offer evidence to prove or attempt to prove the business justification for their concern about late payments and the possibility that Belmont might withhold payment for steel delivered during the pendency of this lawsuit.

In the trial of any case it is the function of the trial judge to be more than a mere arbitrator of objections. He has the duty to conduct the trial in an orderly way with a view toward eliciting the truth and attaining substantial justice for the parties. It is his duty to ensure that the main issues are not obscured by collateral matters and that the testimony is not misunderstood or misconstrued. Cromling v. Pittsburgh and Lake Erie R. R. Co., 327 F.2d 142, 151–153 (3d Cir. 1963); Heron v. Heron, 393 F.2d 652, 656 (3d Cir. 1968); United States v. Budzanoski, 462 F.2d 443, 455 (3d Cir. 1972). It is the task of the trial judge to determine relevancy and to assess potential prejudice and other counterbalancing factors relating to admissibility. Construction, Ltd. v. Brooks-Skinner Building Company, 488 F.2d 427 (3d Cir., filed December 4, 1973).

In determining admissibility, the Court must balance the possible rele-vancy or probative value of offered evidence against the traditional countervailing factors referred to above, namely the danger of unfair prejudice, confusion of issues, or misleading the jury, or considerations of undue delay, waste of time and needless presentation of cumulative evidence. In striking this balance the Court determined that the scale was tipped against admission and that the questionable probative value was outweighed by the possibility of prejudice, confusion and undue delay.

Belmont contends, and the Court agrees, that intent is seldom susceptible to direct proof in any case and that circumstantial evidence may be relied upon to prove intent.[11] That fact, however, does not open the door of admissibility to any and all evidence from which a party contends an inference of intent might reasonably be drawn.

Wide latitude was given to the Belmont in the presentation of its case, and it does not now appear to the Court that Belmont was prejudiced in any way by the rejection of the evidence in connection with the credit termination.

Belmont cites many cases which stand for two general principles of law. The first is that there should be wide latitude of discovery and admissibility in antitrust cases; and second, that all evidence should be admitted which directly relates to the alleged antitrust activity of a defendant whether before or after the time period alleged in the complaint. This Court takes no issue with either of these principles. However, the cases cited by Belmont are not relevant to this issue presented at the trial of this case.

As we heretofore stated, the Court weighed the probative value of the evidence as set forth in the offer or proof and determined that its probative value was clearly outweighed by the possibility of prejudice, the interjection of a collateral issue, confusion to the jury, and the fact of undue delay.

11. Devitt and Blackmar, Federal Jury Practice and Instructions, Vol. 2, Second Edition (1970).

## CONCLUSION

This Court finds after a review of all the evidence that the rejection of Belmont's offer of proof relative to the termination of credit by Bethlehem and the denial of the motion to strike certain cross-examination testimony were not inconsistent with substantial justice and do not present grounds for a new trial.